NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—May, Nov., 1886 ; Feb., 1887.

## MATTER OF WEEKS.

*In the matter of the two several accountings of the executors of the will of* JACOB WEEKS, *deceased.*

The purpose of the act, L. 1875, ch. 542—declaring that certain rents, annuities, dividends and other payments shall be apportioned so that *on the death of any person interested* therein, *or on the determination by any other means whatever,* of his interest, he or his executors, etc., shall be entitled to a proportion therein specified—as regards property devised, was to provide, not for the apportionment of rents as between those entitled to the testator's personal estate and the devisees of his real property, but for such apportionment as between successive takers of the realty.

Matter of Eddy, 10 *Abb. N. C.,* 396—disapproved.

Under Code Civ. Pro., § 2737—enacting that where a "will provides a specific compensation to an executor, he is not entitled to any allowance for his services, unless, by a written instrument filed with the Surrogate, he renounces the specific compensation"—the time within which an executor may renounce his legacy is not limited by law. So long as he has not indicated his election between such provision and the statutory commissions, either by taking to himself one or the other, or by some other mode, his right to file a renunciation, and to avail himself of its benefits, remains unimpaired.

As to whether such a renunciation can be retracted—*quære.*

Testator, at the time of the execution of his will, and at his death, was the owner of a large estate, of which his personal property formed a trivial and insignificant portion. He appointed four executors, to each of whom, or such as might serve, he gave "the sum of $1,200 annually,

in lieu of all commissions or compensation allowed by law." By seventeen distinct provisions, certain parcels of realty were devised to the executors upon trust, to collect the rents, etc., and pay the same to specified beneficiaries during life, after proper deductions for taxes, and other charges, with respective remainders over. The will, however, in no instance, designated the executors as " trustees."—*Held*, that

1. In construing the provision for a salary to the executors, the court might inquire into the character and amount of the testator's estate, both at the time of execution of his will, and at the time of his death.

2. It appearing that the personal property would be little more than adequate for the payment of the fixed salary for a single year, while the will imposed upon the executors onerous and delicate duties in handling the real property and distributing its rents and profits, such salary must be deemed to have been intended as a reward for all services at any time rendered in connection with the entire estate.

3. It being impossible to fix upon any just and fair basis of apportionment of the salaries, as between the real estate and the personalty, and as between the life devisees and the remaindermen, the provision for executorial compensation must fail because of its vagueness and uncertainty.

The *per diem* allowance, authorized by Code Civ. Pro., § 2562, for preparing for trial, cannot be lawfully made except to a party accounting, and can be properly made to such a party only in so far as the labor of preparation is demanded by the best interests of the estate concerned.

Where two co-executors, who differed respecting matters appertaining to the execution of their trust, which might have been satisfactorily presented in one proceeding, filed separate accounts of their transactions, each of which was contested and referred, with substantially the same results that would have been accomplished, had the controversy arisen in respect of the account first filed,—

*Held*, that neither executor, nor any of the other parties, could recover costs or counsel fees out of the estate in both proceedings.

HEARING of exceptions to report of referee, to whom were referred the separate accounts, and objections thereto, of the two executors of decedent's will, in proceedings for judicial settlement.

VAN SCHAICK, GILLENDER & STOIBER, *for executor, Weeks.*

VAN WINKLE, CHANDLER & JAY, *for executor, Cornwell.*

ANDERSON & MAN, W. B. PUTNEY, ABNER C. THOMAS, J. MATTHEWS, H. B. BLAUVELT, *and* EZEKIEL FIXMAN, *for other parties.*

THE SURROGATE.—In his findings respecting the

apportionment of rents I think the referee has erred. The statute, L. 1875, ch. 542, is in these words: " all rents reserved on any lease . . . . granted after the passing of this act and all annuities and dividends, and other payments of every description, made payable or becoming due at fixed periods, under any instrument executed after the passing of this act, or (being a last will and testament) that shall take effect after the passing of this act, shall be apportioned so that *on the death of any person interested in any such rents,* annuities, dividends, or other payments as aforesaid, or in the estate or fund from or in respect of which the same shall issue or be derived, *or on the determination by any other means whatever* of the interest of any such person, he or she and his or her executors, administrators or assigns shall be entitled to a proportion of such rents, annuities, dividends and other payments according to the time which shall have elapsed from the commencement or last period of payment thereof respectively (as the case may be), including the day of the death of such person or of the determination of his or her interest."

There are three classes of cases to which the referee has found this statute applicable: (1) cases in which rents became due before Mr. Weeks died and were collected by him in his lifetime; (2) cases in which rents fell due in his lifetime and were collected by his executors after his death; (3) cases in which rents fell due after he died and have been since collected by his executors.

It is claimed by counsel for some of the contestants that the act of 1875 has no application to any of

these cases; that its purpose, as regards property
devised by will, was to provide, not for the apportion-
ing of rents as between those entitled to the testator's
personal estate and the devisees of his real property,
but for such apportionment as between successive
takers of the realty. A strong argument has been
made in support of this contention, based upon the
supposed reason of the law and the supposed mis-
chiefs or inconveniences which its enactment was
designed to remedy. It first appeared upon our
statute book several years after the passage of the
English apportionment act of 33d and 34th Vict., ch.
35. It is not, however, modeled upon that statute,
but upon the apportionment act of 4th and 5th
William IV, ch. 22, whereof it is almost a literal
transcript. Indeed there are no differences in their
phraseology that could possibly be claimed to justify
or even to suggest a difference in their construction.

Vice Chancellor WIGRAM, in Browne v. Amyot (3
*Hare*, 173 [1844]), declared that the common law
doctrine under which the profits and income inciden-
tal to the beneficial enjoyment of real estate fol-
lowed the title to the premises (so that rents falling
due before a testator's death would go to his personal
representative, and rents falling due after his death
would go to his heir or devisee) had not been affected
by the then recent statute of 4th and 5th William
IV. It was held that the term "person interested in
any such rents," when taken in connection with the
context, meant a person whose legal interest would
*determine* or, in other words, cease and become ex-
tinguished, either upon his own death or upon the

happening of some other event, and that such term was not at all descriptive, therefore, of a tenant in fee or absolute owner. The estate of absolute owner, which was admittedly the estate held by this testator in the property devised, did not determine, or, in other words, was not extinguished by his death. On the contrary, it is through him and by operation of his will that it passed to his executors in trust, and will ultimately be enjoyed by the several remainder men.

The decision in Browne v. Amyot was followed in 1852 by MAULE, J., in Beer v. Beer (12 *Com. B.*, 60, 77), and in 1857 by Vice Chancellor WOOD, in Clulow's Estate (3 *Kay & J.*, 689). The construction to which the English courts seem to have uniformly adhered while the apportionment act of 4th and 5th William IV was in force seems to be much more reasonable than that which commended itself to WESTBROOK, J., in Matter of Eddy (10 *Abb. N. C.*, 386). I feel constrained to adopt it, and all the more because the act of 1875 is thus brought into harmony with the provisions of section 6, tit. 3, ch. 6, part 2 of the Revised Statutes (3 Banks, 7th ed., 2295). That section declares that there shall be included among the property of a decedent's estate which shall be deemed assets, and shall pass as such to his executors and administrators as part of the personalty, " rents reserved to the deceased which had accrued" (*i. e.*, become due) " at the time of his death."

\* \* \* \* \* \* \*

At the time Mr. Weeks made his will, and at the

time of his death, his personal property formed a
very trival and insignificant part of his possessions.
It is well nigh inconceivable that he should have
thought fit to appoint four executors for its manage-
ment and disposition, or that having done so he
should have given them each an annual compensa-
tion of $1,200 for their services in its administration.
On the other hand, he held numerous parcels of real
estate of great value, and by his will he imposed upon
his executors onerous and delicate duties in handling
such real estate and in distributing its rents and
profits.    Under these circumstances, I cannot avoid
the conclusion that when he bequeathed to the execu-
tors an annual salary of $1,200, each, he fixed upon
that sum as their reward respectively for all services
that they might at any time render in connection
with his entire estate, including the real property
devised.    It will be noted that although such real
estate as was not given directly to the widow was given
to the executors in trust, the testator nowhere refers
to them by the name of trustees.    The question is
presented, what compensation, if any, should be now
awarded to the parties here accounting.    Prior to
the adoption of the Code of Civil Procedure, it was
declared by section 59, tit. 3, ch. 6, part 2 of the
Revised Statutes (3 Banks, 6th ed., 101), that,
" where any provision shall be made by any will for
specific compensation to an executor, the same shall
be deemed a sufficient satisfaction for his services, in
lieu of the allowance aforesaid " (that is the allow-
ance of statutory commissions) " unless such executor
shall, by a written instrument, to be filed with the

Surrogate, renounce all claim to such specific legacy."

In place of that provision, there has since been substituted § 2737 of the Code of Civil Procedure, which declares that "where the will provides a specific compensation to an executor, he is not entitled to any allowance for his services, unless by a written instrument filed with the Surrogate he renounces the specific compensation." It can scarcely be claimed that this change in phraseology was designed to effect any change in the policy of the statute. The "specific compensation" is still in' the nature of a "legacy." No time is fixed by law within which an executor must choose between his statutory commissions and his testamentary bequest, and I see no reason to doubt that so long as he has not indicated his election, either by taking to himself one or the other, or by some other mode, his right to file a renunciation and to avail himself of its benefits remains unimpaired. Now, executor Weeks lately undertook to exercise that right, not having theretofore demanded or received any reward for his services and not having in any manner indicated his acceptance of the specific compensation. The referee has found that this renunciation is ineffective because it was not seasonably filed with the Surrogate. In this view I cannot concur. Nor do I deem myself authorized to permit Mr. Weeks to retract his renunciation, as he now offers to do, unless perhaps such retraction shall be consented to by all the parties to this accounting. Executor Weeks will therefore be allowed by decree herein his appropriate share of the statutory commissions upon the personal assets accounted for.

Executor Cornwell has never filed any renunciation of his claim to the $1,200 provision, nor did the executrix file such renunciation in her lifetime, and it is claimed that their acts in transferring to their co-executor their respective claims to the legacy given them by the will must be treated as a waiver on their part of any right to statutory compensation. On the other hand it is urged by Mr. Cornwell's counsel that it is impossible to make the testator's scheme for specific compensation operative, and that the provision establishing it must therefore be treated as practically void. I have found no reported case in which a testator's clearly expressed intention has been disregarded by the courts upon the ground that its execution would lead to inconvenient or unjust results, or results that the testator had probably failed to anticipate. But the question whether the provision referred to is valid or invalid cannot be here determined. Whatever might be my opinion on the subject, I ought not to hold that the provision is ineffectual until after a broader inquiry into its alleged impracticability than has been made in these proceedings, nor until persons interested who are not parties to this accounting have been afforded an opportunity to be heard.

On the other hand, if it be assumed that the disputed provision is valid, no award of compensation can be made upon the facts before me. I have already declared that in my opinion the bequest is intended as a reward for services respecting both real and personal estate. These accounts do not show the amount of the rents, nor do they show how much time and labor have been devoted to the management

of the real estate, as compared with the time and labor devoted to other features of administration.   It is, therefore, impossible to ascertain what proportion of Mr. Cornwell's salary or that which accrued to the executrix in her lifetime may properly be charged against the personal estate.   The decree may reserve all questions as to the amount and basis of compensation to or on account of any of the persons who qualified as executor, except so far as in pursuance of this decision it shall award to executor Weeks statutory commissions.

\*     \*     \*     \*     .  \*     \*     \*

Except in the particulars that I have indicated, the referee's report is confirmed."

In November, 1886, the following opinion was filed in the same matter:

THE SURROGATE.—In accordance with the decision of the General Term of the Supreme court in Weeks v. Cornwell (reported, in part, in 39 *Hun*, 643), I modify my decision of May 14th, 1886, wherein it was declared that persons other than those cited to attend these proceedings should be brought in as parties, before certain questions touching the compensation of the executors could be determined by the Surrogate.   All who are interested in the determination of that question being now before the court, it becomes necessary to pass upon the validity and construction of that portion of the 32d article of the

testator's will which undertakes to provide for the
compensation of his executors.    The provision in
question is as follows :

"I nominate and appoint my wife, Catharine Weeks
executrix, my adopted son, Jacob Weeks Cornwell,
my nephew, Samuel Weeks, Jr., and George Wash-
ington Weeks executors of this my last will and tes-
tament, and I hereby give to them each, or to such of
them as may serve, *the sum of* $1,200 *annually, in
lieu of all commissions or compensation allowed by
law.*"

It is insisted in behalf of some of the parties to this
proceeding that the provision just quoted should
either be treated as wholly invalid because of the im-
practibility of enforcing it, or should be construed
as relating simply to the administration of the per-
sonal property by the executors, as such, and as hav-
ing no application to their dealings with the real
estate.    The latter alternative cannot, it seems to me,
be entertained for a moment.    There are numerous
and irrefragable reasons why the disputed provision,
if it is held to mean anything at all, must be regarded
as establishing the measure of the compensation
which the persons selected by the testator to effect-
uate his testamentary purposes should annually re-
ceive for their entire services in that regard.

This interpretation is plainly written on the face of
the will; and, besides, if it is proper, as I think it is,
to consider, in deciding the question under discussion,
the character of the testator's estate at the time the
will was made and executed, and at all times there-
after until his death, it is preposterous to suppose that

he could have intended by the 32d clause of that instrument to allow his executors, for services in administering upon his personal property, a fixed salary to whose payment, even for a single year, such personal property, all told, would be little more than adequate.

As was suggested in the memorandum of May 14th, the will does not from its beginning to its end make use in a single instance of the word "trustee." It is for "executors" alone that it provides compensation, and it is only upon executors that it imposes any duties or responsibilities. By seventeen distinct provisions certain parcels of real estate are devised to the executors, upon trust to collect the rents, profits and income thereof and to pay the same to a specified beneficiary during his life, after proper deductions for taxes, assessments, insurance and repairs. In every instance the properties so devised are to go upon the death of the beneficiaries to a specified remainderman. If I am correct in holding that the testator's bequest of $1,200 annual salary to his executors was intended in part as compensation for the management of these trusts, then, unless such bequest is for some cause invalid and ineffectual, the burden of paying the salaries of the executors must somehow fall upon the *cestuis que trustent* for life of the real estate devised.

How can any reasonable scheme be established for carrying into effect the testator's purposes? Is the will definite and certain enough in this regard to warrant a court in declaring that this or that suggested mode of apportionment is warranted by its terms? These are questions that demand an answer, despite the fact that the executors are here accounting for

the personal estate only. For if the salary bequest is valid, the parties to this accounting may properly insist that the decree about to be entered shall adjudge what sum, if any, shall be therein awarded to executor Weeks, in view of the agreement to which his associates and himself are parties, as the proportion of the total compensation to which, but for such agreement, such associates would be now entitled under the will. The vain effort which I have made, to fix upon any just and fair basis of now apportioning the burden of these salaries between the real estate and the personalty, and of apportioning it hereafter between the various persons having life interests in the real estate trusts, has forced me to the conclusion that the testator's provision for compensating his executors must fail because of its vagueness and uncertainty.

It is not necessary to discuss in detail the difficulties which stand in the way of practically enforcing this provision. Many of these have been pointed out by counsel. Who can say, in the absence of any direction by the testator, how he intended that the salary charges should be apportioned? Shall the apportionment be made, for example, in the ratio of the gross income of the several beneficiaries, or in the ratio of their net income, or in the ratio of the value of the services required in the management of the several trusts? Suppose that a conclusion is reached upon this point, and suppose it to be determined that the salary expense must be borne by the *cestuis que trustent* in the ratio of their gross income, and suppose the executors to have in hand at a given time

certain income belonging to one of these trusts,—how much shall they pay over to the beneficiary? In order to determine that question, they must first ascertain the aggregate income of all the trusts for the entire year; and as they cannot be certain that all the trusts will outlast the year, and as, in case any of them should determine by the death of the beneficiary, the *corpus* of that trust would pass at once to the specified remainderman, the only course which the executors could pursue, in justice to themselves and the beneficiaries, would be to retain until the end of the year a portion of the income of each trust presumably sufficient to meet their claim.. The will, however, gives no authority for such withholding. Similar obstacles would stand in the way of adjusting the portion of salary to be charged to each trust if the apportionment should be based upon net income instead of gross income, or should be fixed with reference to the value of the trustee's services. In view of the impediments to the practical execution of the provision of the testator's will which relates to the compensation of his executors, I hold that provision is void for uncertainty.

One effect of the foregoing decision is to make the tripartite agreement ineffective for the purposes of this proceeding. That agreement does not pretend to make any assignment or transfer except of the $1,200 salary given to the executors by the will. The decree will award to the accounting parties such portion of the statutory commissions as they may show themselves entitled to receive. Any expense that may attend a controversy in this regard must be de-

frayed out of the aggregate commissions (Matter of Harris, 4 *Dem.*, 463).

\*   \*   \*   \*   \*   \*   \*

The following are extracts from the opinion filed in February, 1887, upon settlement of the decree :

THE SURROGATE.—The decree proposed by the attorneys of executor, Weeks, is in substantial conformity with my decisions of May 14th, 1886, and November 3rd, 1886.  Certain of the amendments proposed by executor Cornwell's attorneys should, however, be allowed.

\*   \*   \*   \*   \*   \*   \*

The provisions suggested by Mr. Candler, respecting the payments of commissions, costs, etc., may be substituted for the provisions suggested by Mr. Man, and for this reason.  The testator left real estate of great value, and an insignificant amount of personal property.  Nearly all of the latter was specifically bequeathed to his widow, and it has been decided by the Supreme court, that her title is absolute, and that resort must be had to the real estate to satisfy the claims of creditors, before the personal property bequeathed to the widow can be used for that purpose.

Before this decision was announced, the executors had applied a portion of the personal property to the payment of debts, and there are now in their hands no funds wherewith to pay the expenses of this accounting.  A large portion of the real estate is specifically devised, some of it in fee and some of it in trust.  By the 24th article of his will \*, the testator

---

\*See Weeks v. Cornwell (104 *N. Y.*, 325).

gave to his executors all the rest, residue and remainder of his estate, real and personal, in trust for certain specified purposes. By the 25th article, the very property referred to in article 24 is, upon the termination of the trust, given in fee to the several " legatees " under the will, in proportion to the value which the provisions in their behalf respectively bear to each other.

The trust attempted to be created in the 24th article has been pronounced void by the Supreme court, but it by no means follows that that article may not be so far effective as to impress upon the property devised by article 25th, the character of a residuary fund. If it has that effect, any changes which, by reason of a deficiency of personal assets, may fall upon the real estate, must fall upon this particular portion of the real estate, rather than upon any portion specifically devised. If, on the other hand, it should be decided that the burden imposed upon the real estate by the Supreme court decision must fall entirely upon the income of the several trust estates, it is manifestly impossible to direct the application of any definite sum from the income of any particular trust without a full account of the receipts of all the trusts as well those that have fallen in, as those that are still existing.

After careful consideration of the matter under discussion, I am convinced that in the decree to be entered herein no direction can properly be given as to the fund from which shall be paid the commissions and costs of this accounting, except a direction that the executors shall pay the same out of that part of

the testator's estate not specifically bequeathed or devised to his widow.

On April 9th, 1883, executor Weeks filed a petition for the judicial settlement of his account, alleging therein that his co-executor had refused to unite with him in the proceeding. On July 10th, 1883, the return day of the citation, executor Cornwell filed an answer to the Weeks petition, in which he set forth the reasons for this refusal. The proceeding was adjourned to September 11th, 1883. On September 8th 1883, executor Cornwell filed his petition for a separate accounting and took out citations returnable on October 25th, 1883. On October 4th, 1883, executor Weeks filed his account together with a reply to Cornwell's answer, alleging that that answer furnished no adequate excuse for the course of action which it undertook to defend.

On October 25th, 1883, the return day of the citation on executor Cornwell's petition, Weeks filed an answer thereto praying that the proceeding be dismissed upon the ground that the estate should be spared the expense of two accountings. On January 18th, 1884, executor Cornwell filed his separate account. It does not appear that the Surrogate was asked to pass upon the issues raised by the petitions and answers above specified until after the coming in of the referee's report. The referee found that there was such a difference of opinion between the executors, as, in his judgment, justified them in accounting separately. In my memorandum of May 14th, 1886, I stated that this portion of the referee's report, to which some of the parties had excepted, was only im-

portant as bearing upon the question of costs and allowances, and that its consideration would therefore be postponed until the settlement of the decree. Applications are now made for costs and counsel fees not only by the two executors, but by five other persons who are here represented. The special guardian of an infant interested in the estate also makes claim to compensation.

These several applications are formally presented in both the accounting proceedings. Although the two accounts were filed pursuant to separate petitions and citations, there has practically been but one litigation. Before executor Cornwell's account was presented, objections had been interposed to the account of executor Weeks by the several parties in interest, including Mr. Cornwell himself, and including also Mr. Cornwell in his capacity as executor of Catherine Weeks, in whose will he was named as residuary legatee.

The issues of the Weeks accounting were submitted to the referee on December 29th, 1883, and to the same referee were submitted on November 17th, 1884, the issues of the Cornwell accounting. Although, in certain formal respects, the earlier proceeding and the later were kept distinct, nearly all the testimony taken in the one was by common consent admitted in the other. The cases were summed up together, and although in each of them the referee filed a separate report, the two reports covered substantially the same ground and were accompanied by a single opinion in which the referee gave his reasons for the conclusions which the report embodied.

All the matters respecting which the executors differed might, it seems to me, have been as satisfactorily presented in one proceeding.  Cornwell inserted in his own account a personal claim against the estate for a debt alleged to have been due him from the decedent.  But this claim was disallowed by the referee, and the disallowance was confirmed by the Surrogate. In all other respects, the practical results of the litigation are the same that would have been accomplished if the controversy had arisen in the Weeks accounting alone.  I hold, therefore, that none of the parties hereto are entitled to costs or counsel fees in both proceedings.

In computing the *per diem* allowance, regard may be had to the total number of days actually occupied, whether in the one accounting or in the other.  It appears that the number of days so occupied in the taking of testimony and in the summing up before the referee was twenty-four.  On three occasions, questions relating to these accountings have been discussed before the Surrogate.  The parties to whom costs may be awarded under § 2561 of the Code of Civil Procedure will therefore be allowed as for twenty-seven, less two, or twenty-five days.

Section 2562 authorizes an additional allowance to an accounting executor for the time necessarily employed in preparing his account and in preparing for trial.  This allowance for preparing for trial cannot lawfully be made to any party except a party accounting, and can properly be made to such a party only so far as the labor of preparation is demanded by the best interests of the estate.

The claim of executor Cornwell to counsel fees under § 2562 I feel compelled to disallow in considerable measure.

The account of executor Weeks who was engaged far more actively than his associate in the management of this estate, was on the files of the court for more than three months before that of Cornwell was presented. The Weeks account was not claimed by executor Cornwell to be incomplete or incorrect, except as regards certain variances between himself and his co-executor which might have been satisfactorily indicated upon its face.

The Cornwell account is in almost all respects a literal copy of the Weeks account, and its transcription cannot have been a laborious or protracted task. I have said that the allowance for preparation for trial, sanctioned by § 2562, can be claimed by the accounting party only, and in his capacity as representative of the estate. It must often happen that such a representative has a personal interest in the estate as legatee or creditor; it is manifestly not the policy of the law to give such a person, merely because of his official relation to the estate, an advantage, in respect to allowance of costs, over other legatees or creditors, in a proceeding brought by himself for the protection of his individual as distinct from his representative interests.

Now the order of reference in the Cornwell accounting was not entered until November 7th, 1884; and the trial did not commence until December 26th. The great bulk of all the testimony submitted to the referee had been taken upon the hearing in the other

accounting. In that proceeding Mr. Cornwell had appeared in the attitude of a contestant, and by far the largest part of such preparation for trial as was made in his behalf must unquestionably have been devoted to the protection of his individual interests.

The decree may make provisions for costs and counsel fees as follows :

To executor Weeks

| | |
|---|---:|
| Costs | $ 70 |
| 25 days at trial | 250 |
| 158 days preparing account and preparing for trial | 1,580 |
| Total | $1,900 |

And disbursements.

To executor Cornwell.

| | |
|---|---:|
| Costs | $ 70 |
| 25 days at trial | 250 |
| 40 days preparing account and preparing for trial | 400 |
| Total | $720 |

And disbursements.

To James W. and Martha Trask,

| | |
|---|---:|
| Costs | $ 70 |
| 21 days at trial | 210 |
| Total | $280 |

And disbursements.

To Henry A. Weeks

| | |
|---|---:|
| Costs | $ 70 |
| 25 days at trial | 250 |
| Total | $320 |

And disbursements.

And a like allowance to Mr. Blauvelt, and to the parties respectively represented by Mr. Thomas, Mr. Matthews and Mr. Fixman.