Matter of the Judicial Settlement of the Account of LINDLEY M. and EDWARD M. FRANKLIN, as Executors, Etc., of MORRIS FRANKLIN, Deceased.

(Surrogate's Court, Queens County, January, 1899.)

1. **Executors — Taxes not confirmed until after testator's death.**

   Although tax-rolls had not been made out and confirmed by the board of supervisors on October 22, 1885, the date of the death of a person to whom real property had been assessed by town assessors, his executors may properly pay from his estate the tax levied for the year 1885.

2. **Apportionment — Life tenant entitled to rents and interest accruing after devisor's death.**

   Where a testator devises the use of his residuary estate to his widow for life, she is entitled to rents and interest which became

Surrogate's Court, Queens County, January, 1899. [Vol. 26.

payable after his death, and no apportionment of them, as of the death of the testator, should be made between the widow and the remaindermen.

3. **Executors — Commissions on lands taken as payment for residuary shares.**

Where, upon a foreclosure of a bond and mortgage belonging to a testator, his executors buy in the real estate, divide it into lots and sell them at auction to the legatees, among others, who take lots as payment of their shares in the residuary estate, the executors are entitled to commissions on the proceeds of the sale of the lots.

4. **Same — " Debts," where an estate exceeds $100,000.**

For the purpose of determining whether an estate exceeds $100,000, exclusive of debts and whether three full commissions can consequently be charged, funeral expenses and expenses of administration are not to be deemed " debts " of the testator.

5. **Same — Interest on commissions taken in advance.**

Executors have no right to commissions until they have been duly allowed, and, if they take them otherwise, are chargeable with interest; but where they retain them after having, with the consent of the legatees, distributed nearly all the estate out of court, they will not, on a subsequent judicial settlement, be charged with interest on the commissions taken.

PROCEEDINGS were instituted for a judicial settlement of the account of the executors of Morris Franklin, deceased. The widow, who was executrix, died before the commencement of the proceedings.

The testator died October 22, 1885, being seized of real property in the town of Flushing, and the assessors of that town had assessed such property to him on their rolls.

The tax-rolls were made out and confirmed by the board of supervisors after his death. The testator left personal property largely invested in interest-bearing securities. Among these securities was a bond and mortgage against one Leavitt. This mortgage the executors foreclosed and, on the sale, purchased the property to hold it for a price which would satisfy the judgment. Subsequently by agreement with the legatees they mapped and sold it by lots at auction. At this sale each legatee purchased one or more lots. He gave by the will to each of his two sons a house and

lot to be valued by appraisers and the appraised value to be charged against them on account of their legacies.

Joseph K. Murray, for executors.

Frederick Eder, for contestants.

MOORE, J., acting as surrogate.   The contestants filed objections to the account of the executors as filed, and thereafter counsel for executors and counsel for the contestants filed a written stipulation reducing the issues to be determined.   No testimony was taken.   The stipulation submits four questions which were argued at length.

First: Were the taxes of the year 1885 a debt of the testator?

Second: Are the executors entitled to more than one full commission for compensation under section 2730?

Third: Did the testator intend that his widow should take accruing rents and interest of his residuary estate falling due after his death?

Fourth: Should the executors be charged with interest on commissions paid to themselves?

I think the tax for the year 1885 was properly paid by the executors out of the estate.   Although the tax had not become a lien at the time of the death of the testator, he had become personally liable to pay the same when it should be levied by the proper officers upon the assessment-rolls which had become complete and unalterable.

His liability to pay the tax so levied did not depend at all upon its becoming a lien, but rather upon his personal liability under the law regulating the assessment of property for the purposes of taxation.   Mygatt v. Washburn, 15 N. Y. 316; Rundell v. Lakey, 40 id. 513; Matter of Babcock, 115 id. 450.

The cases cited by contestants — Lathers v. Keogh, 39 Hun, 576; Matter of Hun, 144 N. Y. 472; Deraismes v. Deraismes, 72 id. 154; Whitson v. Whitson, 53 id. 479 — do not apply to the issue here.

I have no doubt that the testator intended that his widow should take as income what he would have treated as income.   Her comfortable support and maintenance was his first care, and to that purpose he gave to her own separate use and benefit, the residuary

estate for life.   Moreover his intention was just what the rules of law provide in these cases.

I cannot assent to the contention of the contestants that the rents of real property, and interest and dividends on investments represented by securities, accruing, but not payable at his death, should have been apportioned between the life tenant and the remaindermen as of the date of the death of the testator.

The life tenant did not succeed to the title to the real estate nor to the ownership of the personal property.   The remaindermen succeeded the testator to the *corpus* of the estate.   Apportionment in the class of cases within which this case falls, is required only where the successive takers of the estate become, at the same time, entitled to take the rents, interest and dividends therefrom.   So that no apportionment was required to be made until the remaindermen became entitled to take the income of the estate, to-wit: upon the death of the life tenant.

All the rents, interest and dividends which became payable or accrued after the death of the testator, and before the death of the life tenant, went to the life tenant under the will, because the same were thereby specifically given to her.   The use of the real and personal property is nothing more nor less than the rents of the real estate and the interest and dividends of the personal property. Rents are no less rents and interest does not become something else because they begin to accrue before the death of the testator. They are the earnings of the property, so to speak, and the property was, by the will, given to the remaindermen, and the earnings were given to the life tenant during her lifetime.   Code of Civil Procedure, § 2720; Matter of Weeks, 5 Dem. 194, Miller v. Crawford, 26 Abb. N. C. 376.

The Leavitt property was, in the hands of these executors, personal property.

The lots conveyed by the executors to certain of the legatees were conveyed and accepted as payment of so much of their respective shares in testator's residuary estate.   The aggregate of these payments with the other proceeds of the sale of these lots represent the sum received on the mortgage which was foreclosed by the executors, and it is subject to the commissions for compensation of the executors.

The personal estate of the testator was inventoried by the appraisers at $81,448.75, and the increase is $46,889.08, making a total of $128,337.83, the losses aggregate $9,162.43, and the

debts of the testator, which have been paid by the executors, aggregate $13,830.75, leaving a net balance of $105,344.65 for the payment of funeral expenses, and the expenses of administration and for distribution. The funeral expenses and the expenses of administration are in no sense debts of the testator.

The estate being $100,000, exclusive of all the debts of the testator, and there having been two executors and one executrix, the three representatives are entitled to compensation equal to three times the amount of full commission to one executor to be apportioned in proportion to services rendered and responsibility borne. Matter of Newland, 59 N. Y. St. Repr. 526; Estate of Welling, 7 Civ. Pro. 92; Matter of Kenworthy, 63 Hun, 165.

Executors are not entitled to take commissions until the same have been allowed by an order of the surrogate on an accounting, and, if an executor takes commissions without such an allowance, he is chargeable with interest on commissions so withdrawn from the estate, from the time of such withdrawal to the time of the allowance of compensation by the surrogate on an accounting. Wheelwright v. Rhoades, 28 Hun, 57.

Instances will be found in the books, where estates have been settled by agreement and distributions made, the executor retaining commissions for his compensation, in which the executor has not been charged, in a subsequent judicial settlement of his accounts, with interest on the commissions so retained. Matter of Dunkel, 10 N. Y. St. Repr. 213.

These executors, in their account as filed, state that a settlement of the estate was had between the legatees and the executors, and that the executors distributed to the legatees their respective shares under the will, less the commissions allowed by law, as compensation to executors, which they retained, together with their respective shares of the estate, and that it was then understood that the legatees would examine the account and the same would be adjusted, and the executors finally released by the legatees without any judicial settlement.

These statements are denied; but they are corroborated by Schedule E of the account, which shows that between January 2, 1895, and May of that year, a general distribution was in fact made of nearly all the residuary estate, reserving only $2,000 to meet possible liabilities arising out of a pending action.

In Wheelwright v. Rhoades, *supra*, the executors, soon after their appointment, withdrew $15,000 on account of commissions,

while in this case the executors had become entitled to be allowed the commissions on a final settlement of their accounts by the surrogate, and retained them, as appears from the account, at the time of the distribution.

They acted in good faith, the legatees have suffered no loss, and it would be unjust to now require the executors to pay interest on these commissions because they distributed the estate out of court, with the consent of the legatees.

Decreed accordingly.