Brown *v.* Brown.

---

CHARLES BROWN, adm'r &c. *vs.* CHRISTINA BROWN.

Where a husband deposited in a savings bank, money belonging to himself, to his own credit, saying he wanted it so that either he or his wife could draw the money, and both he and his wife entered their names on the signature book, opposite which the clerk of the bank wrote the words, "to be drawn by either," and a pass book was given to the husband, as a voucher for the deposit; *Held,* 1. That this was not a valid gift of the money to the wife; a delivery of the money, or at least of the evidence of the deposit, being indispensable to such a gift.

2. That upon the wife's surviving her husband, she was not entitled to the money on the ground of the deposit having been to the joint credit of both.

3. That the wife was not, in respect to the deposit, a creditor of the bank, but the husband was the sole creditor.

4. That the wife was a mere agent of the husband, in respect to the sum deposited, without any beneficial interest therein ; and that so long as the authority to her was unrevoked she could draw the money, but that her authority terminated on the death of her husband.

And the wife having, after the death of her husband, presented the pass book at the bank and drawn out the money, giving a receipt therefor, signed by her in behalf of her husband, it was *further held* that she was bound to refund the money, in an action at the suit of her husband's administrator.

ON the 20th day of October, 1852, Charles Brown, jr. went with his wife to the Rochester Savings Bank, where he deposited $500, saying "he wanted it so that either he or his wife could draw the money." Both entered their names on the signature book, opposite which the clerk of the bank wrote the words "to be drawn by either." The account was opened with Mr. Brown, and a pass book was given as a voucher for the deposit, which book he took away with him. Mr. Brown died in the afternoon of the 5th of January, 1853, and on the following day Mrs. Brown, the defendant, drew the money ; giving therefor the following receipt :

"Rochester, Jan. 6, 1853.

Received of Rochester Savings Bank, on my deposit, five hundred and four $\frac{17}{100}$ dollars.     For CHARLES BROWN.

CHRISTINA BROWN."

When the money was thus drawn the officers of the bank did not know of the death of Mr. Brown. On the 23d of March, 1853, the plaintiff was appointed administrator, &c. of his son, the said Charles Brown jun. deceased. After demand and refusal, this action was brought to recover the money. On the trial, conversations with the deceased were testified to, in which he stated, after the money was deposited, that he had "put the money in the bank, and he took his wife along, and the money he put in the bank belonged to her ; that he had sold his house and lot, so that nobody could have any thing of it, except his wife ;" that he had "fixed it so that his folks could not take it again, if he should die ; that she (his wife) had made the most of it by sewing and washing and keeping boarders ; that he had put her name in the bank book, so that she could take it at any time," &c. The money deposited was money which Charles Brown, jun. had received on the sale of his house and lot and furniture. It was proved that he owed some debts, at the time of his death. The plaintiff was one of his creditors.

The evidence being closed, the court charged the jury, that from the evidence of the witness Loomis, it was probable that the deceased, coming to the bank as he did, intended to deposit the money for the benefit of the defendant ; that to the

Brown *v.* Brown.

mind of the court the circumstances of the deposit were very strong evidence that he. intended to give the money to her; but that whatever might have been his intentions, if he did not make what the law would pronounce a delivery of the property, the title to the money did not pass; that so long as the deceased kept a control over the money, or retained the power to re-possess himself of it, he was still the owner of it; it mattered not that the wife earned a portion or all of the money by her labor and services; the law adjudged the money so earned to belong to the husband. That evidence of her services was admitted to show a good reason why there should have been a gift; that whether there was a gift or not was a fact which must be made out in a legal way; if there was a gift at all, it was a gift *inter vivos*, and better for the defendant than a gift *causa mortis*. The plaintiff's counsel requested the court to charge the jury that had the money been deposited in the name of the wife alone, it was competent for the deceased, at any time, to revoke her authority to draw it, and that her authority to draw the money in this case ceased with the death of her husband. The court refused so to charge, to which refusal the plaintiff's counsel excepted. The plaintiff's counsel then requested the court to charge the jury that if they believed the witness Loomis as to the entries in the signature book and the pass book, they must find for the plaintiff. The court refused so to charge, to which refusal the plaintiff's counsel excepted. The plaintiff's counsel then requested the court to charge the jury that if they believed the deceased left debts they must find for the plaintiff. The court refused so to charge, but held that the fact of there being debts made no difference, unless it was shown that there was not enough of the estate left to pay the debts, and as to this fact the *onus probandi* was on the plaintiff; to which refusal and ruling the plaintiff's counsel also excepted. The defendant's counsel then requested the court to put the question of intent to the jury; that if the jury believed that the deceased intended to give the money to his wife when he made the deposit, they

should find for the defendant. The court refused so to charge, to which refusal the defendant's counsel excepted.

The jury then, under the direction of the court, excepted to by the defendant, rendered a verdict for the plaintiff for the sum of $586.22, subject to the opinion of the court at general term, on a case to be made by the plaintiff, with leave to turn the same into a bill of exceptions.

*F. Delano,* for the plaintiff.

*P. G. Buchan,* for the defendant.

*By the Court,* T. R. STRONG, J. The money in question, before it was deposited in the bank, belonged to the plaintiff's intestate, the husband of the defendant. It was the proceeds of a sale by him of his house and lot, and some of his furniture, in which it does not appear that the defendant had any legal interest. Her labor had contributed to the acquisition of the property, and in a greater degree than that of the intestate, according to his declaration to one of the witnesses; but he, as her husband, was entitled to her services and earnings, and the property belonged to him. There is evidence in the case, on the part of the defendant, that the intestate, in conversation about the sale of his property, and the money, stated that he had put the money in the bank, and it belonged to the defendant; but there is also evidence by the defendant, of declarations of the intestate that he had fixed it so his folks could not take the money if he should die; that his wife had put her name in the bank book, so she could take it at any time; that he had put it in the bank in his and his wife's name. Viewing all the evidence on this subject, it is apparent the intestate did not mean to be understood that the money actually was the defendant's, but only intended to convey the idea that he had, as he supposed, placed the money in the bank on such terms that the defendant, and not his father, or any of his father's family, could obtain it if she survived him. It is manifest that in making the deposit the intestate did not in-

Brown *v.* Brown.

tend to give the money to the defendant; for although he first stated to the officers of the bank that he wanted to deposit it in the name of his wife, it is evident from the conversation which followed, and what was done, that he supposed he would not thereby divest himself of a right to take the money from the bank, and that he desired the deposit to be so made that either he or the defendant could withdraw the money. Clearly there was no valid gift. A delivery of the money, or at least of the evidence of the deposit, investing her with the full control over it, was indispensable to such a gift. And there is no pretense, or ground for a claim, that the intestate subsequently made a gift of the money to the defendant. If then the defendant is entitled to retain the money, it must be because the deposit was in effect to the joint credit of the intestate and herself, and that she is the surviving creditor. The intestate, although the sole owner of the money, might, except as against the claim of his creditors in the absence of other assets to pay them, by depositing the money to the credit of himself and the defendant jointly, secure to her the whole on her surviving him. He clearly desired that in that event she should have the whole; but that is not sufficient to entitle her to it unless the legal means to effect the object were pursued. Like an intention to make a gift, unexecuted by a delivery, it is fruitless. The only evidence in regard to the transaction with the bank, in the deposit of the money, aside from the declarations of the intestate already referred to, is derived from the book keeper of the bank, and the pass book taken by the intestate. He testified, in substance, that on the intestate saying he had some money which he wished to deposit in the name of his wife, who was present, the witness inquired whether either had an account with the bank, and was told that the intestate had; that he turned to the account and told him it did not make any difference whether the money was in her name or his; that it could be so put in that either could draw it. It was then credited to the name of the intestate, posted under his old account, a pass book charging the bank and crediting him with the money was delivered to him, and he and the defendant entered their names in the signature

book of the bank, opposite which the clerk of the bank wrote the words "to be drawn by either." It does not appear that the intestate expressed in words, his assent to have the deposit to the credit of his own name solely, but such assent sufficiently appears from what was done, in the absence of any objection by him. The book keeper further testified: "the pass book is held by the depositor as a voucher, and the only voucher, until the whole amount is drawn from the bank, and then it is given up to the bank." Taking this testimony of the book keeper, in connection with the declarations of the intestate, and regarding the claim of the defendant as favorably as I am permitted to do, it appears to me the court cannot properly hold that the defendant was, in respect to the deposit, a creditor of the bank. The intestate was the sole creditor. He deposited his own money to his individual credit. His name only appeared in the books of the bank as the creditor. The entry of the names in the signature book, with the words added by the clerk, formed no part of the contract of deposit. The object of that was, that the bank might have evidence of their handwriting, and to show that the defendant was authorized to receive the money. The appropriate mode of withdrawing the money would be, by presenting the pass book and giving a receipt for the money in the name of the intestate. This mode was pursued when the money was obtained by the defendant; she delivered the pass book, and gave a receipt expressing by the signatures to be for the intestate by the defendant.

The difficulty with the defense is, that the intestate misjudged as to what was necessary to be done to secure this money to the defendant if she outlived him. He may have been misled by the advice of the book keeper; but it was intended by him after the advice, that the business should be done as it was done. The business was done in such a manner that the defendant, as well as the intestate, so long as the authority to her was unrevoked, could get the money; but her authority terminated with the death of the intestate. She was a mere agent in the matter, without any beneficial interest. It is not in the power of the court to relieve the defendant, and give her

the money, because the intestate intended she should have it. It can only pronounce the law upon the actual transaction between the intestate and the bank, leaving the case to swell the number of those with which the books abound, where parties have failed by their acts to carry out their intentions.

The cases of *Stanwood* v. *Stanwood*, (17 *Mass. Rep.* 57,) *Phelps* v. *Phelps*, (20 *Pick.* 556,) *Ames* v. *New*, (5 *Metc.* 320,) and *Fish* v. *Cushman*, (6 *Cushing*, 20,) throw some light on this case, but are all clearly distinguishable from it.

In my opinion the plaintiff is entitled to judgment on the verdict.

[Monroe General Term, March 2, 1857. *T. R. Strong*, *Welles* and *Smith*, Justices.]