In the Matter of the Judicial Settlement of the Accounts of SPEN-
CER CLINTON and Others, as Executors, etc., of HARRIET A. BEN-
NETT, Deceased, Appellants.

CLARK H. TIMERMAN, Special Guardian, etc., Respondent.

*Executors' accounting — right to commissions both as executors and as testamentary*
*trustees.*

A will, after bequeathing certain articles of personal property, devised and
bequeathed the residue of the estate to the executors in trust, to apply the
income and so much of the principal as they might deem judicious to the
support of the decedent's husband. The executors were directed, after the
husband's death, to make certain disposition of the residue of the estate, and
were also authorized, empowered and directed, as soon after the death of the
testatrix as they should deem it for the best interest of the estate, to sell the
real estate, and, until a sale, to lease, collect the rents, repair, insure, pay
taxes and assessments and rebuild and mortgage the same, and, in their discre-
tion, to carry on any business in which decedent was engaged at the time of
her death, until the same should, in their judgment, be wound up, and to
employ in such business as much of the estate as was, in their judgment, nec-
essary. They were also authorized to pay incumbrances on real estate out of
any money which might come into their hands.

The testatrix died February 2, 1894, and the husband died November 6, 1894, and
on November 14, 1895, the executors filed a petition for a judicial settlement of
their accounts as executors. They never kept accounts as testamentary trus-
tees, nor asked for an accounting as testamentary trustees, except, it might be,
in the expenditure of $2,575.29 in the support of the husband, on which sum
each executor was allowed by the surrogate double commissions, i. e., both as
executor and trustee.

*Held*, that they were entitled only to executors' commissions, as provided by the
Code of Civil Procedure, section 2730, and were not entitled, in addition thereto,
to the commissions allowed to testamentary trustees by the Code of Civil Pro-
cedure, section 2802.

The question as to the allowance of the double commissions on the $2,575.29 was
not presented by the appeal.

APPEAL by Spencer Clinton and others, as executors, etc., of
Harriet A. Bennett, deceased, from so much of a decree of the Sur-
rogate's Court of the county of Erie, entered in said Surrogate's
Court on the 10th day of March, 1896, in a proceeding for the
judicial settlement of their accounts, as disallows certain commis-
sions claimed by them as such executors.

February 2, 1894, Harriet A. Bennett died leaving a will executed

September 15, 1891, by which the appellants were nominated as executors, which was duly probated April 23, 1894, and letters testamentary issued thereon to the executors therein nominated, who immediately entered upon the discharge of their duties, and are now engaged in discharging their duties as executors.

By the 1st paragraph in the will the testatrix directs the payment of her debts and funeral expenses. By the 2d paragraph she bequeaths various articles of personal property. The remainder of the estate is then disposed of as folows :

" *Item third.* I give, devise and bequeath all of my estate, both real and personal, including all claims and demands which I may possess not hereinbefore devised, to my executors hereinafter named as trustees, to have and to hold the same upon the following trusts : To apply the income thereof and so much of the principal thereof as in their judgment shall be judicious, for the care, support and maintenance of my husband, David S. Bennett, and I give them full power and authority to use the whole of said principal and income for that purpose if in their judgment it shall be advisable to do so to secure his happiness and comfort.

" *Item fourth.* I direct my said executors to dispose of the residue of my estate, that is, that portion of my estate which shall not be used for my husband's benefit, or heretofore devised, as follows :

" 1. I authorize, empower and direct my executors, as soon after my decease as they shall deem to be for the interest of my estate, to sell my real estate in such manner and on such terms as they shall think best, and to execute and deliver to the purchaser or purchasers thereof good and sufficient deeds of the same ; and until such sale, in their discretion, to let or lease the same, or any part or parts thereof, to collect the rents thereof, and to take proceedings to dispossess or eject any tenant or occupant thereof ; to repair and insure the same ; to pay all taxes and assessments imposed thereon ; to rebuild the same, in case of the injury or destruction thereof, or any part thereof, by fire or otherwise, and to mortgage the same, or any part or parts thereof, as many times as they shall deem necessary or advisable.

" 2. I also authorize and empower my executors, in their discretion, to continue, conduct and carry on any business or businesses, and especially the grain elevating business, in which I may be

engaged at the time of my death, until the same should in their judgment be wound up, or until the real estate in which it is carried on, or which pertains to it, is sold, and to employ in such business or businesses so much of my estate as may in their judgment be necessary.

"3. I also authorize and empower my executors, in their discretion, to apply any money which may come to their hands, whether principal or income, to the payment or reduction of the principal of, and interest on, the incumbrances on my real estate.

"*Item fifth.* Out of the proceeds and conversion of the sale of my personal and real estate I direct my executors to pay :"

Then follows bequests to various legatees, and a residuary clause disposing of the entire estate.

November 6, 1894, nine months and four days after the death of the testatrix, David S. Bennett, her husband, died; between the date of the death of the testatrix and the date of his death the executors expended for his care, support and maintenance, $2,575.29.

The testatrix left a personal estate valued at $66,269.29 and a real estate valued at $500,000, making a total of $566,269.29, the gross income of which, between the date of the death of the testatrix and November 1, 1895, the date of the executors' account, was $94,606.21.

November 14, 1895, the appellants verified and filed a petition praying for a decree judicially settling their accounts as executors. An accounting was had and it was adjudged that the executors should be charged and credited as follows :

For moneys received............................ $160,905 50
Credited for money paid out.......... $126,859 63
Cash on hand ........................ 34,045 87
                                    ——————— 160,905 50

The sum of $2,575.29 expended for the support of David S. Bennett is included in the item $126,859.63, money paid out.

Each appellant was allowed commissions as executor as follows:

|  | Amount paid out. | Commissions. |
|---|---|---|
| Five per cent on................ | $1,000 00 | $50 00 |
| Two and one-half per cent on.......... | 10,000 00 | 250 00 |
| One per cent on..................... | 115,859 63 | 1,158 59 |
|  | $126,859 63 | $1,458 59 |

Each appellant was allowed commissions as testamentary trustee on $2,575.29, the amount expended for the support of David S. Bennett, as follows:

| | | |
|---|---:|---:|
| Five per cent on.............. | $1,000 00 | $50 00 |
| Two and one-half per cent on... | 1,575 29 | 39 38 |
| | $2,575 29 | $89 38 |

Total commissions allowed each appellant as executor and as testamentary trustee................. $1,547 97

Four thousand six hundred forty-three dollars and ninety-one cents were allowed the three appellants for their commissions as executors and as testamentary trustees.

*Adolph Redabow*, for the appellants.

*Sidney W. Petrie*, for the respondent.

FOLLETT, J.:

The commissions of executors are fixed by section 2730 of the Code of Civil Procedure, which, among other things, provides: "If the value of the personal property of the decedent amounts to one hundred thousand dollars, or more, over all his debts, each executor or administrator is entitled to the full compensation on principal and income allowed herein to a sole executor or administrator, unless there are more than three, in which case the compensation to which three would be entitled must be apportioned among them according to the services rendered by them respectively, and a like apportionment shall be made in all cases where there shall be more than one executor or administrator."

Subdivision 6 of section 2514 of the Code of Civil Procedure provides:

"6. The expression 'testamentary trustee' includes every person, except an executor and administrator with the will annexed, or a guardian who is designated by a will, or by any competent authority, to execute a trust created by a will; and it includes such an executor or administrator where he is acting in the execution of a trust created by the will, which is separable from his functions as executor or administrator."

By section 2802 of the Code of Civil Procedure testamentary trustees are entitled to the same commissions as executors.

The personal estate of the testatrix did not amount to $100,000, and realty of the value of at least $500,000 was unsold when the accounting was had. The Surrogate's Court held that the will converted the realty into personalty, out and out, as of the date of the death of the testatrix, and that the executors took the entire estate as personalty, and it was to be administered as such, and that for the purpose of determining the amount of the commissions, the entire estate was to be treated as personalty, and every one of the appellants was entitled to full commissions as executor and as testamentary trustee on the amount paid out in each capacity. The special guardian not having appealed, we cannot determine whether each appellant was entitled to full commissions on $126,859.63, the amount paid out as executors, or whether each appellant was entitled to full, or any, commissions as testamentary trustee on $2,575.29 expended in the support of David S. Bennett.

In *McAlpin* v. *Potter* (126 N. Y. 285) the Court of Appeals, following the earlier cases of *Johnson* v. *Lawrence* (95 N. Y. 154) and *Laytin* v. *Davidson* (Id. 263) has laid down a rule for determining whether a person is entitled to commissions as executor and as testamentary trustee for administering the estate in the following clear and explicit language: " Both cases agree in the rule that double commissions to the same persons, first in the character of executors and then in that of trustees, are to be awarded only when the will contemplates a several and separable action in each capacity, not at the same, but different stages of the administration, and that they are not to be allowed where the will makes no such separation, but blends the two duties and commingles them without a severance. To the ordinary duties of an executor may be added the performance of a trust in such a manner that the two functions run on together. It is the duty of an executor, as such, to pay to a legatee the amount of the legacy in the manner and at the time provided by the testator, and it does not change that duty that the payment of the principal is postponed and the income made payable annually in the meantime. A trust duty may thus be imposed upon an executor, which thereby becomes and is made a function of his office. A will must go further than that to admit of double com-

missions, and must clearly and definitely indicate an intention of the testator to end the executor's duty at some point of time, and require him thereupon to constitute and set up one or more several trusts, to be held and managed as such for the interest of the beneficiary."

I find nothing in the will which would justify the conclusion that the testatrix intended that the appellants should act in two distinct and separate capacities, as executors and testamentary trustees, during the lifetime of her husband, or solely as testamentary trustees during his life. On the contrary, it is plain, I think, from the face of the will, that she intended them to act from the beginning to the end as executors, and that they should, as an incident of their executorial duties, expend so much of the income and such part of the principal as should be required to maintain her husband during his life. By the 1st, 2d and 3d subdivisions of "Item Fourth," the appellants, as executors, are authorized to continue the business of the estate until its final settlement, and are authorized to mortgage, lease or sell any part or all of it, from time to time, as they shall deem best. This power existed during the lifetime of David S. Bennett, and now exists. The income from which they were to support the husband was received as executors, and, if any portion of the body of the estate was to be sold and the avails applied for this purpose, it was to be done by them as executors and not as testamentary trustees.

So much for the intention of the testatrix. Under this will, it was not possible for the executors to discharge all of their executorial duties under the 1st and 2d clauses and then hold the estate as testamentary trustees for the benefit of David S. Bennett, unconnected with executorial duties, for, as before shown, the business was to be carried on by the appellants as executors, and the estate was to be wholly managed by them as executors. It was not possible for them, under this will, to have had a judicial settlement of their accounts as executors and then to set apart and to have held the remainder of the estate solely as testamentary trustees during the life of David S. Bennett, and then after his death have taken up and concluded their duties as executors. The will does not empower them to separate their duties, nor have the appellants acted upon this theory. They have kept no accounts as testamentary trustees, have not sought

an accounting as such, nor have they done any act which, by the most liberal construction, can be called an act of testamentary trustees, except to expend $2,575.29 for the support of David S. Bennett, on which sum each has been allowed double commissions as executor and as testamentary trustee.

Article 2 of title 4 of chapter 18 of the Code of Civil Procedure provides for an accounting by executors, and title 6 provides for an accounting by testamentary trustees. The appellants have not applied for an accounting as testamentary trustees, but for an accounting as executors.

Assuming that, under a proper petition, the two accountings may be combined and double commissions allowed, there is no mention in the petition filed that the appellants had acted as testamentary trustees, or that an accounting in that capacity would be asked for. The accounts contained in the record are their accounts as executors and not accounts as testamentary trustees. The expenditure of $2,575.29 for the support of David S. Bennett is included in the appellants' accounts as executors, which shows how they understood and discharged their duties. There is nothing in the accounts rendered or in the record showing that these appellants rendered distinct services in both capacities.

No error was committed by the Surrogate's Court as against these appellants.

This appeal having been prosecuted by the appellants, not in the interest of the estate, but in their interests as individuals, they should pay the costs.

That part of the decree of the Surrogate's Court which is appealed from should be affirmed, with costs against the appellants personally.

All concurred, except ADAMS, J., not sitting.

That part of the decree of the Surrogate's Court appealed from is affirmed, with costs against the appellants personally.