sideration of that very clause, the court of appeals has held that the effect of it was to give to each of the children an interest in his share of the remainder which vested in him at the time of the death of the testator. In re Murphy, 144 N. Y. 557, 39 N. E. 691. It is quite clear, therefore, that, by the direction to divide in that clause of the will, the testator intended to give a vested interest to each one of the persons among whom the division was to be made. It is almost necessarily to be inferred from this that the word "divide," which was used with the intention of passing a vested interest, in the fourth subdivision of the fifth clause, was used with the same intention in the second and third subdivisions, where it appears in the same connection. We find, therefore, in this will, a plain indication that the testator intended to give to each of the persons among whom the remainders were to be divided a vested remainder. That being so, the rule is settled that the presumption is that the disposition was to take effect in interest at the date of the death of the testator. Nelson v. Russell, 135 N. Y. 137, 31 N. E. 1008. The law favors the vesting of legacies, and, even where there is no gift except by way of a direction to pay, the legacy will be construed to be vested, if an intent to that effect on the part of the testator is fairly to be inferred from the whole will. Bowditch v. Ayrault, 138 N. Y. 222, 34 N. E. 514.

For these reasons we think that the conclusion reached by the referee was correct, and the judgment entered upon his report must be affirmed, with costs. All concur.

(25 App. Div. 209.)

In re PRENTICE et al.

(Supreme Court, Appellate Division, First Department. January 21, 1898.)

1. EXECUTORS—ACCOUNTING—COMMISSIONS.

Upon an accounting by executors, the fact that there is not then before the court sufficient property to admit of immediate payment of their commissions does not deprive the court of jurisdiction to determine the amount due for services already performed by the executors.

2. SAME.

Where the amount to which executors are entitled for commissions has been fixed by the decree in proceedings for an accounting, the fact that they do not insist upon retaining sufficient funds to pay themselves at once does not deprive them of the right to the commissions thus allowed.

3. SAME—SALES OF REAL ESTATE.

A will devised and bequeathed real and personal property to the executors "in trust to convert the same into money at such time as in their discretion may seem most advantageous," and to pay annuities during the life of testator's wife. Upon her death they were directed to divide, distribute, and pay over the same to persons described, and full power was given to them to sell the real property at such times as they might deem proper. Held, that the power of sale survived the death of testator's wife, and that the executors, in respect to sales of real property after her death, for which they received the proceeds, were entitled to commissions upon the amount involved.

4. SAME—DISBURSEMENT OF FUNDS.

Held, further, that while, upon the death of the wife, it was the duty of the executors to effect a distribution without unreasonable delay, yet, in so

far as it still continued essential for them to hold and disburse funds of the estate for necessary expenses, they were entitled to commissions for so doing.

5. SAME.

Where real property was duly sold and conveyed, and the proceeds received, by executors, by virtue of a testamentary trust power, the fact that the beneficiaries also executed a confirmatory deed to the purchaser did not deprive the executors of their commissions.

Appeal from surrogate's court, Kings county.

In the matter of the judicial settlement of the accounts of William S. P. Prentice and Theron G. Strong as sole surviving executors of John H. Prentice, deceased. Anna P. Terry appeals from the decree of the surrogate.

Letters testamentary upon the estate of John H. Prentice were issued in March, 1881. There have been three accountings by the executors. The second included the period from July 1, 1883, to April 1, 1893; and the third, the period from April 1, 1893, to May 1, 1895. The second decree, entered January 27, 1894, awarded the executors $34,792.38 for commissions. No appeal was taken therefrom. In September, 1895, a motion was made in behalf of the appellant to reopen the decree. It was denied; no order being entered, or appeal taken. The third decree awarded a further sum of $45,609.83 for commissions. The appellant duly filed objections to the account, which were referred to a referee, and by him overruled. From the decree subsequently entered this appeal is taken.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Edmund R. Terry and Eliphalet B. Terry, for appellant.
Theron G. Strong, for respondents.

BARRETT, J.   The correctness of the award of commissions made by the decree of 1894 is no longer open. To that decree the appellant was a party, and it stands in all respects unreversed and unmodified. The Code of Civil Procedure distinctly provides (section 2742, subd. 1) that such a decree is conclusive as to the correctness of the amounts allowed to the accounting party for services rendered. The appellant's counsel are in error in believing that this decree was rendered without jurisdiction because there was not then before the court sufficient property to admit of immediate payment of the commissions. This did not prevent the court from determining the amount due for services already performed. A binding adjudication upon this question was quite independent of the amount of assets then in the hands of the executors. Nor did the executors make a gift of their commissions to the cestuis que trustent because they did not insist upon retaining sufficient funds to pay themselves at once. All that they thus surrendered was the present use of the money.

The principal question under the decree of 1896 relates to the allowance of commissions upon the amount received from the sale of the Prentice stores and the cottages. This question depends upon the proper construction of the testator's will. By its third clause he devises and bequeaths all the residuary estate, real and personal, to his executors, "in trust to convert the same into money at such time as in their discretion may seem most advantageous." Three annuities are directed to be paid out of the income. Upon the death of his wife

(should she die after January 1, 1890, as actually happened), the testator directs the executors to "divide, distribute, and pay over all said rest, residue, and remainder of my estate   *   *   *   to and among such of my children as shall be living and the issue of any deceased child, share and share alike." By the following clause the executors are directed "to apply all surplus or undisposed of income, rents, and profits that may come into their hands prior to the time provided for the distribution of my residuary estate" in the manner specified. By the ninth clause full power is given the executors to sell, mortgage, or lease the real estate at such times as they may deem proper. Mrs. Prentice died in February, 1893. The store property, which formed part of the residuary estate, was then undisposed of. It was sold in January, 1895; the executors giving one deed, and the beneficiaries another. The question to be determined is whether the executors gave their deed, and received the proceeds, in the exercise of a power conferred by the will. That the will gave the executors power to sell at any time during the life of Mrs. Prentice is admitted. It is said, however, that the power ceased with her life. We are unable to concur in this view. Whether or not there was an absolute direction to sell, which would have effected an equitable conversion, there was at least a broad authority so to do, unqualified as to time. That authority was conferred upon the executors as an aid and incident to the discharge throughout of their executorial duties. The appellant errs in believing that the executors had no functions to perform except such as related to the distribution of the income during the life of Mrs. Prentice. Another and hardly less important duty was the distribution of the principal at the termination of the trust. At that time they were directed to "divide, distribute, and pay over" the estate to the beneficiaries. It is significant that the word "convey," or some similar word, was not used in this connection, and that in the same clause the testator added, "And I give and bequeath said residuary estate accordingly." The language used indicates an intent that the beneficiaries shall take the estate in the form of personalty, and affords strong ground for an argument that there was an equitable conversion. But this question we need not consider. What is clear and decisive is that this clause, taken with the broad and unqualified power to sell, shows beyond doubt that the executors had authority to convey the real estate after Mrs. Prentice's death, and distribute the proceeds. Power to sell for purposes of distribution is well recognized. It may exist although the fee of the lands has passed to devisees under the will. Crittendon v. Fairchild, 41 N. Y. 289; Manier v. Phelps, 15 Abb. N. C. 123. The case last cited is very like the present. There was a gift of the income of the estate to the testator's wife, and at her death a devise and bequest of the property to certain individuals. A general power of sale was given the executors, as well as authority to invest and reinvest the income of the estate. It was held by Martin, J., in a well-considered opinion, that the power to sell was distinct from the authority to invest; that it was a general power, not limited to income-producing purposes; and that it survived the death of the wife, for purposes of distribution. It follows that the execu-

tors, in selling the store property and receiving the proceeds, were performing a lawful trust duty, and are as much entitled to commissions upon the amount involved as upon any other sums passing through their hands.

It is said that the sale was not made by the executors, but by the beneficiaries under the residuary clause of the will. This is not the proper construction of the transaction. The negotiations for the sale were carried on by the executors. Upon receiving a suitable offer, they obtained from the beneficiaries a written consent "to accept said offer on our behalf, and to make, execute, and deliver the necessary instruments of conveyance of the same." Soon after, the executors gave their deed to the purchaser. Upon the same day the beneficiaries also executed a deed. In it the premises were described as "the same premises sold and conveyed to the party hereto of the second part by [the executors], and which sale and conveyance is hereby intended to be in all things confirmed by the parties hereto of the first part, who accordingly execute these presents." Both parties evidently considered that the sale was made by the executors under the power, for the executors received the purchase price and distributed it accordingly.

It is further contended that there was error in the allowance to the executors of commissions upon sums expended in the payment of mortgages upon the real estate, and also upon the full price of the unincumbered land. The question of law which the appellant here presents need not be considered, for the reason that the facts appearing upon the record are insufficient to raise it. We cannot tell from the record whether commissions were granted by that decree on the sums used to extinguish the mortgages. The schedules are not in evidence, and the decree and the portion of the accounts introduced do not disclose that any of the sums on which commissions were allowed were used to pay mortgages. It certainly is not for us to infer either that the decree of 1894 allowed commissions upon an improper basis, or that the decree appealed from is erroneous in computing commissions upon a basis proper in itself, but rendered improper by previous allowances.

Lastly, it is said that the executors were not entitled to commissions upon the income of the estate received and paid out after the death of Mrs. Prentice. Upon her death it was doubtless their duty to distribute the personal property among the residuary legatees without unnecessary delay. On the other hand, it was manifestly impossible for them at once to devest themselves of all the personalty. They had a reasonable time within which to execute the power of sale of the real estate. Hancox v. Meeker, 95 N. Y. 528. An immediate sale would have resulted in serious loss, and the circumstances show that the executors exercised their power wisely. But while the property remained in their hands there were taxes and numerous other expenses to be paid, which required the retention of large sums of money. In so far as the executors were thus compelled to hold and disburse the moneys of the estate, we can perceive no reason why they are not entitled to commissions for so

doing.    There is nothing to show that they have retained possession of the estate in an unreasonable manner.    In fact, the great bulk of the residuary principal has been distributed.

None of the other points discussed require consideration.    The decree appealed from should therefore be affirmed, with costs.    All concur.