### (Surrogate's Court, Rensselaer County. December, 1903.)

1. TRUSTEE—LIABILITIES—UNAUTHORIZED INVESTMENTS.

Where a trustee loaned the trust money to a corporation of which he was a stockholder, though the loan was unauthorized, he was not liable for interest on the basis of the amount of the loans as compared with the total capital stock of the corporation and its earnings, nor for more than the interest he actually received, where the rate thereof was that which the corporation was paying at the time on loans from other persons, and was advantageous to the beneficiaries.

2. EXECUTOR—COMPENSATION.

Where testator bequeaths to his executor and trustee money in full of all commissions, disbursements, and charges relating to the settlement of the estate, it precludes such executor from accepting commissions either as executor or trustee.

3. SAME—ATTORNEY'S FEES.

The executor of a deceased trustee, who was also a substituted trustee on an accounting, is entitled to a division of a bill for services of attorneys, beneficial to both estates, between such estates.

In the matter of the judicial settlement of W. H. Rowe, trustee under the will of A. D. Rowe, deceased. Decree rendered.

Shaw, Bailey & Murphy, for petitioners.
T. S. Fagan, for life beneficiary.
J. K. Long, special guardian, for infants.

HEATON, S. Accounting by W. H. Rowe, Jr., as executor of W. H. Rowe, deceased, who was trustee under the will of A. D. Rowe, deceased. Objections to the account have been tried. W. H. Rowe, the trustee named in the will of A. D. Rowe, died April 21, 1898. His accounts as such trustee had been settled in appropriate proceedings in May, 1892, and the account now filed covers the period between those dates. The decree of May, 1892, showed a balance of cash in hands of the trustee of $19,446.57, to be held as a trust fund under the fourth subdivision of the will during the life of Camilla R. Strickland (now Lewis), and directed a final distribution of a like sum held under the second subdivision in trust during the life of the widow who had just previously died. It appears now that, prior to that time and on March 19, 1889, said W. H. Rowe had assigned to himself, as trustee for Mrs. Strickland, the O'Brien mortgage of $4,000, being a first lien on a farm in Washington county, the purchase price of which appears from the deeds thereof to have been $6,270, in 1869. The said mortgage was foreclosed by the trustee in April, 1898, and the property brought on such sale $2,000, leaving a loss of upwards of $2,000. The account as filed shows that this loss, with interest thereon, has been made good, and the whole amount of the O'Brien mortgage, with interest, has been accounted for, thus eliminating one of the objections to the acts of the trustee which Mrs Lewis made when informed by the successor to the trustee that the fund amounted to $17,446.39 only.

Three questions have been submitted: Should the trustee be charged with the income and profit on certain funds of the trust estate loaned to a manufacturing corporation of whose stock the trustee was one of three owners, such income and profit to be ascertained by adding the dividend paid upon the capital stock of such corporation and the surplus accumulated; should the trustee be allowed expenses and commissions in face of a legacy, in the will of deceased, purporting to be compensation for such services and expenses; and should a charge of $500 made by the attorney for the trustee in connection with the O'Brien mortgage matter be allowed?

1. The trustee, W. H. Rowe, his son, W. H. Rowe, Jr., and his wife, Frances J. W. Rowe, were the directors and held all the stock of the Wayside Knitting Company, a domestic corporation with a capital stock of $60,000, and a surplus of over $137,000 in 1893, and of over $243,000 in 1898. W. H. Rowe & Son, after 1894, was a corporation, but no evidence has been given showing its stockholders, or the amount of its capital stock and assets. May 28, 1892, the trustee loaned the Wayside Company $1,446.57 of the trust moneys, taking a note bearing 6 per cent. interest. February 25, 1893, he loaned the same company $1,000 at the same rate of interest. July 22, 1896, he loaned the same company $13,000 at 5 per cent. interest. November 20, 1897, he loaned the same company $300 at 5 per cent. interest. April 4, 1898, he loaned W. H. Rowe & Son $1,700 at 6 per cent. interest. This interest money has been collected by the trustee from time to time and paid over to the beneficiary. From 1892 to 1898 the Wayside Company borrowed each year large sums of money, ranging from $193,000 down to $88,000, at rates of interest ranging from 6 per cent. to 4 per cent. The dividends paid on the capital stock of $60,000 were 30 per cent. in 1893, and 10 per cent. in each subsequent year to and including 1898. Based upon the capital stock and surplus for these years, a computation has been given showing that the dividends showed a profit upon the money invested of between 9 per cent. and 10 per cent. in 1893, and between 2 per cent. and 3 per cent. each year thereafter. The accounting party seeks by this evidence to show that the trustee made no personal profit by loaning the trust funds to his corporation, even if such money should not be treated as a debt, and therefore excluded in arriving at a surplus, but considering it as an investment and as part of the surplus. The theory of the contestants is that the $17,000 trust moneys should be considered with the $60,000 capital stock and the amount borrowed during the year, and that the amount appropriated to dividend and carried to surplus represents the earnings of the money in use, and therefore the $17,000 trust moneys should be credited with a proportionate share. Resort is had to this method of computation to show that the trust funds made a profit to the trustee of more than 5 per cent. annually, which additional profit should inure to the benefit of the trust estate. To adopt and carry out the view of the contestants, it would be necessary to find several propositions, viz.: That the trustee had used the trust fund in his own business when he loaned it to a corporation in which he was a stockholder and officer; that he as such stockholder had made a personal profit from the use by the cor-

poration of such trust funds in its business; the exact amount of profit which he as such stockholder had made by the corporation's use of such trust money. The books of the deceased trustee put in evidence designate all these transactions as loans to the corporation, and show payments of interest upon such loans at the rate at which they bore interest. There is no evidence that the trustee was guilty of any fraud or subterfuge in holding out an investment as a loan. The corporation was apparently not hard pressed for money so that the borrowing of this money was particularly advantageous to the corporation. In 1895, the year before the $13,000 was loaned, the corporation borrowed $50,000 at five per cent. and $15,000 at 4 per cent. In 1896, it borrowed $70,000 at 5 per cent., and in 1897 it borrowed $85,000 at 5 per cent. and $85,000 at 4½ per cent. It would seem, then, that, when the corporation borrowed the trust fund at 5 per cent., it was more of an advantage to the trust estate than to the corporation. Taking into consideration all the facts of this case, there is no reason in law or equity why these transactions should be held to be a use by the trustee of the trust funds in his own business, or why he should be held liable to the trust estate for any part of the profits, if any, made by the corporation during the years when it was a borrower from the trust estate.

The facts of this case are clearly different from the facts in such cases as Hannahs v. Hannahs, 68 N. Y. 610, relied on by the contestants. Here the trustee loaned the funds to a solvent corporation at an agreed rate of interest. In no case did he mingle the estate funds with the corporate funds, as the trust money was always a debt due from the corporation, and was not liable to diminution in case of shrinkage of assets, or to increase in case of addition to the surplus.

It has not been claimed that the trustee is chargeable with more money as interest than he has collected and accounted for. There is no doubt but that the investment was not of the character authorized by law, but the trustee is responsible to the beneficiaries only for the loss which they may sustain by such unauthorized investments. Matter of Barnes, 140 N. Y. 471, 35 N. E. 653. Some of this fund was loaned at 6 per cent., and when a large sum was paid in at one time it was loaned at 5 per cent. It is common knowledge that trust funds in amounts above $5,000 do not realize in authorized investments more than 5 per cent. interest, and most of them even much less. The trustee seems to have acted most honestly and fairly. While he loaned money to a corporation that he was interested in, he secured for the beneficiaries the highest rate that they could expect to obtain in authorized investments, while he charged °the corporation the mean rate at which it was borrowing.

2. Should the trustee be allowed commissions and expenses? The will of A. D. Rowe, deceased, contains this provision:

"I give and bequeath to my executor and trustee hereinafter named five hundred dollars to be by him received in full of all commissions, personal expenses, disbursements and charges of every kind relating to the full and final settlement of my estate."

The accounting party claims that this legacy was in lieu of commissions and expenses on final settlement of the accounts of the ex-

ecutor only, and not of commissions and expenses for handling the trust funds. The contestants claim that it was intended to cover all such commissions and expenses of every kind to the final distribution of the trust funds. The fact that such commissions and expenses were allowed on the last accounting of the trustee is not decisive of the question, as no objection was raised to their allowance, and it does not appear that this provision of the will was called to the attention of the court and passed upon. The bequest in terms applies to the trustee as much as to the executor. He has accepted it, and, therefore, is clearly not entitled to commissions in any capacity. Neither is he entitled to personal expenses, disbursements, or charges of any kind. Reasonable and proper attorney's fees for services which might be needed for the protection of the estate or the proper transaction of the legal business of the estate are not charged upon the bequest to the executor and trustee, and should be allowed. The bequest was in lieu of commissions and personal expenses, disbursements, and charges. The executor and trustee was not a lawyer, and it was his right and duty, when the necessity arose, to employ a competent lawyer to advise him and to transact such legal business as he could not do, and the estate should pay therefor.

3. Should the bill of $500 paid to Shaw, Bailey & Murphy for services in the O'Brien mortgage matter be allowed? The accounting party here is also the executor of the W. H. Rowe estate. When, as such executor, he undertook to make this accounting, he ascertained that there was a loss of upwards of $2,000 on the O'Brien mortgage. He represented his father's estate, which might be liable for its loss, and the trust estate which had suffered such loss. He was also substituted trustee of the trust estate. He therefore owed a duty to both estates. He employed highly competent attorneys to examine the facts and the law, and give him an unbiased opinion, which he has adopted. These attorneys were not employed in the interest of the trust estate only, but for the benefit of both. That the services resulted in more benefit to the trust estate is no reason why all of the expense thereof should be charged to it. It might be said that the W. H. Rowe estate was greatly benefited by avoiding expensive and unsuccessful litigation. The amount of $250 of such bill is allowed against the trust estate.

Decreed accordingly.