(49 Misc. Rep. 189)

## In re SEIGLER'S ESTATE.

### (Surrogate's Court, Dutchess County.   January, 1906.)

1. GIFT—SAVINGS BANK DEPOSIT—EVIDENCE.

A mother changed her savings bank account to herself and son, "payable to either or survivor," and retained possession of the book until her death.  *Held*, that there was no gift to the son, and he was properly charged as administrator of his mother with the amount of the deposit and accrued interest.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Gifts, §§ 53, 55, 56.]

2. ADMINISTRATORS—COMPENSATION.

Where an administrator is allowed the usual commissions, an item for services in looking after personal property of the estate should be disallowed.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 2084, 2118.]

3. SAME—ACCOUNTING—COSTS.

Persons representing the estate on questions litigated on the accounting by an administrator are entitled to costs payable out of the estate.

In the matter of the settlement of the account of the administrator of Mary E. Seigler, deceased.   Decree entered.

Amasa P. Disher, for William Seigler, administrator.
E. S. Luckenbach, for Delia Miller.
George R. Carhart, for Helen Miller.
Joseph Morschauser, special guardian, for Chauncey Seigler.

HOYSRADT, S.   On the settlement of the accounts of William Seigler, as administrator of the estate of his mother, Mary Seigler, it is sought to charge him with the amount of a savings bank deposit which he has not included in his account.

Mrs. Seigler, who died intestate, January 14, 1904, was survived by her husband and eight children.   Her husband died about one month later.   The gross value of her personal estate, excluding the deposit in question, is $785; and, although there is evidence of her desire that William should manage her property, I have found no indication of any intention on her part to favor any of her children in the final distribution of her estate.

On January 7, 1902, Mrs. Seigler went to the Hudson City Savings Institution, unaccompanied, and by her directions the officers discontinued the deposit then standing in her name, on which there was due $313.60, and opened a new account for the same amount to the credit of "Mary E. or William Seigler, payable to either or survivor." An additional deposit of $350 was made in this account June 11, 1903, and the amount due at the time of Mrs. Seigler's death was $692.22. From the time this deposit was commenced, Mrs. Seigler retained possession of the bankbook continuously until her death, and it does not appear that the son, William, ever saw the book during that period or had any conversation with his mother about the deposit.  The natural presumption that this account was placed so either the mother or son could withdraw it, for convenience, is strongly fortified by the

son's evidence. He, the son, William Seigler, has testified and re-iterated:

"It was in our joint name, I suppose it was hers, that she put it there for convenience so that we could both draw it. Q. It was her money and she put it that way for convenience so that you could draw it? A. Yes. Q. You made no claim to it? A. No."

In a letter written by Mary Seigler to her son William, dated January 17, 1902, she says:

"What I am about to ask of you is in case if I should die before my money is spent I have found there might be some trouble in collecting it, so I have been to the bank and have had it fixed so you could draw it in case I am dead. I know you will do what is right with it, so I will send you the envelope and the slip of paper that they gave me and you send it to them."

The claim of the administrator to the deposit in question must necessarily rest upon a gift inter vivos to establish his ownership, and, with the facts stated in mind, it is very evident that the most essential elements of such a gift are lacking in this case. The rule has been frequently stated and will be found associated with facts quite similar to those in the case at bar, in Matter of Bolin, 136 N. Y. 177, 32 N. E. 626, where a Mrs. Cody changed her bank account to one entitled "Julia Cody or daughter Bridget Bolin." The book subsequently came into the daughter's possession, but the court held that nothing beyond the presumption of convenience arose from the transaction, and that no gift was made out. The court, at page 180 of 136 N. Y., page 626 of 32 N. E., says:

"There were no words of gift, and the holding of the passbook was consistent with a mere custody or agency. The law never presumes a gift. To constitute a valid gift there must have been the intent to give and a delivery of the thing. The evidence must show that the donor intended to divest herself of the possession of her property, and it should be inconsistent with any other intention or purpose."

This rule is elaborated in Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531, particularly on the question of what constitutes a delivery, which the court says may be either actual or symbolical; that is, by actually transferring the manual custody of the chattel to the donee, or giving to him the symbol which represents possession. In this case the deposit was placed in the name of a father and son. The father retained the book, and there was no evidence, as in the case at bar, of an intention by the parent to part with ownership, and it was held that no gift was established. The same reasoning is followed in De Puy v. Stevens, 37 App. Div. 289, 55 N. Y. Supp. 810, where the deposit was to "S —— or D —— either or survivor to draw," and it was there further held that an alleged gift inter vivos or causa mortis, which is not asserted until after the death of the donor, should be supported by evidence of the highest probative force. Joint tenancy and survivorship incidental thereto are not favored in law or equity and never when any other deduction can be made.

I am unable to distinguish the essential facts in the case under consideration from those in Kelly v. Home Savings Bank, 44 Misc. Rep. 102, 89 N. Y. Supp. 776, where a mother caused her savings bank deposit to be placed in the name of herself and her daughter so that

either could draw it, the mother retaining possession of the book. And Judge Herrick held that, although the mother intended that the daughter should have the deposit at her death, there was no absolute gift of the deposit and no irrevocable renunciation by the mother of all her interest and no creation of joint tenancy or survivorship. In Hallenbeck v. Hallenbeck, 44 Misc. Rep. 109, 89 N. Y. Supp. 780, a deposit was made in the name of "Huldah Van Aernan or Huldah B. Hallenbeck pay to either or survivor of either." They were aunt and niece. There were full instructions to the treasurer of the bank to permit either to draw and the niece did make two withdrawals in the lifetime of the aunt. The facts showed that the original owner never surrendered dominion or control over the deposit. She kept the passbook, only permitting the niece to take it to make the withdrawals, and it was held that the gift was not completed under authority of Beaver v. Beaver and Kelly v. Home Savings Bank, supra. The same ruling is to be found in Wood v. Zornstorff, 59 App. Div. 538, 69 N. Y. Supp. 241. In Farrelly v. Emigrant Industrial Savings Bank (Sup.) 87 N. Y. Supp. 54, the donor in her lifetime delivered her bankbook, entitled "Margaret or son Frank J.," to her sister, with instructions to deliver it to the son, showing an intention to divest herself of ownership; but this delivery and declaration distinguishes this clearly from the case at bar. It is also to be readily distinguished from Mack v. Mech. Bank, 50 Hun, 477, 3 N. Y. Supp. 441, where the book was delivered by the donor to the donee with the declaration: "This is yours."

The only inclination to swerve from the well-established rules in these cases in shown in several decisions involving deposits made by husband and wife, and usually accompanied with the statement that the proof of intent to make a gift was found satisfactory (McElroy v. Nat. Savings Bank, 8 App. Div. 192, 40 N. Y. Supp. 340; Matter of Finn, 44 Misc. Rep. 622, 90 N. Y. Supp. 159; Matter of Meehan, 59 App. Div. 156, 69 N. Y. Supp. 9), although, on the principles involved, these cases appear to conflict with Matter of Ward, 51 How. Prac. 318, and Brown v. Brown, 23 Barb. 565.

I have found the line of decisions in other states quite in accord with those cited. Where a depositor, accompanied by his sister, went to the bank and had his deposit made payable to himself and his sister, and their survivor, subject to the order of either, held not a gift. Taylor v. Henry, 48 Md. 550, 30 Am. Rep. 486. By a deposit in the joint name of himself and his child, merely for the convenience of the parent in drawing money, a determination to make a gift is not shown merely by facts that the account was permitted to remain in the joint names and the parent made loose declarations indicating a gift. Skillman v. Wiegand, 54 N. J. Eq. 198, 33 Atl. 929; Norway Sav. Bank v. Merriam, 88 Me. 146, 33 Atl. 840; Noyes v. Inst. for Savings, 164 Mass. 583, 42 N. E. 103, 49 Am. St. Rep. 484, to the same effect.

The evidence in the case under consideration clearly shows that Mrs. Seigler never intended to dispose of this bank account in her lifetime. If we sensibly construe her own words, she intended nothing more than that, if any of it remained at her death, then William should do what was right with it toward the natural objects of her

bounty. The operation of the law will now, I think, carry that intention into effect, as none of the requisites of a valid gift seem to be present in this case. The administrator will therefore be charged, in addition to the amount stated in his account, with $692.22, with interest from January 1, 1904.

Another objection to an item of $50 with which the administrator credits himself, for work in looking after personal property of the estate and for loss of time from his usual occupation, seems to be well taken. His commissions are full legal compensation for such service, and this item will be disallowed. With the exception of these two items, to be adjusted, and the payment of George Wood's bill of $15 for services and stenographer's bill of $11.75, the account will be allowed as presented.

I have concluded that the administrator's counsel has been sufficiently paid for his services to the estate. The services which he and his associate have rendered in aiding the administrator to establish his individual claim against the estate cannot be paid for out of the assets, and the same is true as to the disbursements incurred in the same effort. The estate cannot be made to pay for successfully defending the claim. The special guardian and counsel for Helen Miller, who have, in effect, represented the estate upon the litigated questions on this accounting, are each entitled to $50 costs, payable out of the estate.

Decreed accordingly.

---

(49 Misc. Rep. 186)

### In re BOSTWICK'S ESTATE.

(Surrogate's Court, Dutchess County. January, 1906.)

1. WILLS—INTEREST ON LEGACIES.
 An absolute legacy to a wife in lieu of dower does not draw interest until one year from the issuance of letters testamentary.
 [Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 1856.]

2. SAME—CONSTRUCTION—GENERAL LEGACY.
 Testator had agreed by an antenuptial agreement that his executors should pay his wife $4,000 within six months after his death, with interest, and that she, in consideration thereof, should release her dower and make no claim against his estate. *Held*, that the direction to his executors to pay such sum was unnecessary, and where, in addition to such direction, he provides for payment of $6,000, the words: "Which sums aggregating $10,000 are to be accepted by my wife in full satisfaction and in lieu of dower in my real estate as agreed between us in the said antenuptial agreement"—are of no legal effect, and the $6,000 is a general legacy.

3. SAME—INTEREST.
 A general legacy draws interest from one year after letters are issued.
 [Ed. Note.—For cases in point, see vol. 49, Cent. Dig. Wills, § 1849.]

In the Matter of the Settlement of the Estate of Henry Bostwick, Deceased. Judgment entered.

C. W. H. Arnold, for executor.
Allison Butts and John Hackett, for widow.

HOYSRADT, S. On the 13th day of March, 1899, Henry Bostwick and his intended wife, Emma F. Davis, entered into an antenup-