Thomas H. O'Connor, as Executor, etc., Respondent, *v.* John P. Huggins, Appellant.

In an action to compel the specific performance of a contract on the part of defendant to purchase certain property situate in the county of New York, these facts appeared : C. died intestate in Indiana in 1845, seized of the premises. In 1850 one P., a creditor of C., obtained letters of administration of his goods, etc., from the Surrogate's Court of Richmond county. The petition upon which the letters were granted stated that C. "died possessed of personal property in the state of New York." Subsequently, and before letters were issued, the petitioner presented an affidavit showing the existence of assets in Richmond county. The letters recited that C. left assets unadministered in said county. P. subsequently made due application for authority to mortgage, lease or sell the real estate of C. for the payment of his debts, and in 1851 such authority having been granted, the premises in question were sold to plaintiff's testator A., who died in 1872. In 1886 the agreement in question was executed between his executors and defendant. Defendant objected to the title that the Surrogate's Court did not acquire jurisdiction to issue letters to P as administrator of C., and that the proceedings instituted by P. for a sale of the real estate were defective and ineffectual to confer any title to the land. *Held*, untenable; that the statutory requirement of assets in the county was met by the petitioner; that the recital in the letters was *prima facie* evidence of the existence of the facts stated, and the record showed that the necessary facts were alleged and proved upon which the surrogate acted in granting them; that his determination upon the proofs, however erroneous, cannot be disturbed by an attack upon it in a collateral proceeding.

Although Surrogates' Courts are courts of special and limited jurisdiction, where jurisdiction to act exists their orders or decrees are conclusive until they are revoked or reversed on appeal. (2 R. S. 80, § 56.)

That conclusiveness, in the absence of fraud or collusion, attaches in a case where a jurisdictional fact is in question and it appears there was proof with respect to its existence, upon which the surrogate decided.

A surrogate is not confined to any form of procedure or mode of proof in acting upon an application for letters of administration, and may take proof by affidavit.

It was claimed, and it appeared, that the order to show cause why a sale should not be had was made returnable one day later than the time limited by statute, which requires all persons interested to appear at a time and place specified, "not less than six weeks nor more than ten weeks from the time of making such order." (2 R. S. 107, § 5.) *Held*, that there was no substantial departure from the requirements of the statute; that if there was an irregularity, it was not one which abridged the rights of anyone, and was not a jurisdictional defect.

*Stilwell* v. *Swarthout* (81 N. Y. 109) distinguished.

The trial judge found, upon sufficient evidence, that plaintiff's testator had been in continual occupation and possession of the premises in question under a claim of title founded upon deeds from 1851; that the lands had been protected by a substantial enclosure; that plaintiffs and their testator had paid the taxes and assessments upon the same. After testator's death the plaintiffs had rented the premises. There was no proof or pretense of any other claim to the property lying either in grant or in claim. *Held*, that a valid grant must be presumed as arising from an exclusive and uninterrupted possession under a claim of title founded on a conveyance for more than twenty years; that such a presumption will always displace objections based on flaws in the proceedings in which the title has had its source and protect it from being injured by their disclosure.

The time for the completion of the purchase was extended by mutual consent to January 17, 1887. *Held*, that interest on the purchase-money should be computed from that time only.

(Argued April 18, 1889; decided May 3, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 13, 1887, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term.

This was an action for the specific performance of a contract for a sale of real estate in the city of New York.

The facts, so far as material, are stated in the opinion.

*Francis B. Chedsey*, for appellant.    The question as to whether the estate of Isaac F. Craft, deceased, was within the jurisdiction of the county judge of Richmond county, and his authority to issue letters of administration, under which proceedings were instituted for the sale of the real property, is involved in such doubt that a purchaser ought not to be required to accept a title depending upon the determination of that question.  (*Roderigas* v. *E. R. S. Inst.*, 76 N. Y. 323 ; *Sibley* v. *Waffle*, 16 id. 189 ; *Shriver* v. *Shriver*, 86 id. 575 ; *Cochran* v. *Fitch*, 1 Sandf. Ch. 145 ; *Mulcahey* v. *E. I. S. Bank*, 89 N. Y. 438 ; 1 Parsons on Contracts, 31 ; 76 N. Y. 323 ; *Fleming* v. *Burnham*, 100 id. 1.)  The order to show cause upon which the order of sale was based was made returnable one day later than the time limited by the statute, and that vitiated the proceeding.  (2 R. S. 101, § 5 ; *Fleming* v. *Burnham*, 100 N. Y. 1.)  The publication of the order to show cause, as returnable on the ninth day of January instead of the twenty-eighth, was fatally defective. (*Sibley* v. *Waffle* 16 N. Y. 187, 189.)  The plaintiffs have not shown title in their testator resting in adverse possession, by evidence so clear and of such a substantial character as to leave no room for opposing inferences or for a different conclusion on a new inquiry.  (*Jackson* v. *Woodruff*, 1 Cow. 276 ; *Pope* v. *Hanmer*, 74 N. Y. 240 ; *Florence* v. *Hopkins* 46 id. 136 ; *Thompson* v. *Burnhans*, 89 id. 99 ; *Yates* v. *Van de Bogert*, 56 id. 526 ; *Jackson* v. *Schoonmaker*, 2 Johns. 229.) The question whether the defendant was bound to accept a title resting in adverse possession, had such title been shown, may be considered an open question in this court.  (*Hartley* v. *James*, 50 N. Y. 38 ; *Mott* v. *Mott*, 68 id. 246 ; *Shriver* v. *Shriver*, 86 id. 575, 586.)

*Charles E. Miller* for respondents.    Letters of administration granted by the surrogate are conclusive as to his authority. (*Leonard* v. *Columbia Steam Nav. Co.*, 84 N. Y. 48, 55 ; *Roderigas* v. *East River Sav. Bk.*, 63 id. 460 ; *Kelly* v. *West*, 80 id. 139 ; *Farley* v. *McConnell*, 7 Lans. 428 ; 52 N. Y. 630 ;

*Van Dusen* v. *Sweet*, 51 id. 378, 385; *Johnson* v. *Smith*, 25 Hun, 176; *Sheldon* v. *Wright*, 5 N. Y. 497; *Porter* v. *Purdy*, 29 id. 106.) Such a decree cannot be collaterly impeached or attacked, and is conclusive, unless reversed on appeal or revoked by the surrogate himself (*Wetmore* v. *Parker*, 52 N. Y. 450; *Matter of Harvey*, 3 Red. 214) for the reason that the surrogate must, of necessity, have passed upon that question before he admitted the will to probate. (*Bolton* v. *Brewster*, 32 Barb. 389; *Porter* v. *Purdy*, 29 N Y. 106.) The statute conferring jurisdiction upon the surrogate does not require preliminary proof to be made before him of the facts upon which his jurisdiction depends. (*Sheldon* v. *Wright*, 1 Seld. 497, 511.) The only proof to be taken before the surrogate is that the deceased died intestate. (2 R. S. 74, § 26.) Nor is a petition essential; and if there be a petition, it is not necessary that any of the facts conferring jurisdiction should be stated in it. (*Johnston* v. *Smith*, 25 Hun, 176.) The return day of the order to show cause why a sale should not be had was within the time prescribed by statute. (Bouvier's Law Dictionary; *Ronkendorff* v. *Taylor's Lessee*, 4 Peters, 93; *Bachelor* v. *Bachelor*, 1 Mass. 256; *Olcott* v. *Robinson*, 21 N. Y. 150; *Cornell* v. *Moulton*, 3 Denio, 12; *Judd* v. *Fulton*, 10 Barb. 117; *Vandenburgh* v. *Van Rensselaer*, 6 Paige, 147.) If it be held that it was not returnable until the day after the expiration of the tenth week, it is submitted that the statute was substantially complied with. The object of the statute was to give ample notice to all persons interested. (*Stillwell* v. *Swarthout*, 81 N. Y. 109.) Any omissions or irregularities in the proceedings of sale are answered by the statutory provisions validating surrogate's sales. (3 R. S. [5th ed.] 192, 193, 198, §§ 38, 39, 70.) The judgment of the Surrogate's Court is conclusive on the jurisdictional fact of publication of the notice. (*Sheldon* v. *Wright*, 1 Seld. 497–517.) A clear adverse possession for twenty years makes a title which a purchaser at a judicial sale may not refuse. (*Shriver* v. *Shriver*, 86 N. Y. 575, 581; *Othinger* v. *Strassburger*, 33 Hun, 466.)

Gray, J.  The defendant has objected to the title proffered by the plaintiffs, on the ground that it was not a good and marketable one, and he bases his objection on the invalidity of a sale of the premises made to the plaintiffs' testator in 1851. Isaac F. Craft acquired the title to the premises in 1828, and, while seized of them, died intestate in Indiana, in 1845. In 1850 one Pell, a creditor of Craft, obtained the grant to himself of letters of administration of the goods, etc., of the intestate from the Surrogate's Court of the county of Richmond, in this state.  Subsequently to his obtaining this grant of letters, the administrator made due application for authority to mortgage, lease or sell the real estate of the intestate for the payment of his debts, and, in 1851, such authority being granted, the premises were sold to the plaintiffs' testator, Andrew Carrigan.  Carrigan lived in a mansion-house, upon a tract of land, of which the premises in question formed a part, until his death.  In 1873 letters testamentary on his estate were granted to these plaintiffs, who had been named in his last will as his executor and executrix.  They sold the premises in question here to the defendant at public auction, in 1886, and the agreement was then executed, to enforce which the plaintiffs have brought this action.  The defendant raises two distinct questions with respect to the acquisition of title by the plaintiffs' testator.  The first is that the Surrogate's Court of Richmond county did not acquire jurisdiction to issue the letters to Craft's administrator; and the second is that the proceedings, instituted by the administrator for a sale of the real estate, were defective in certain respects, and hence were ineffectual to confer any title to the land. The objection, which goes to the granting of the letters of administration, proceeds on the theory that the recital in them, that Craft left assets unadministered in the county of Richmond, by reason whereof jurisdiction to grant administration thereupon appertained to the surrogate of said county, was disproved by the evidence upon the trial.

It is true that, in the petition for the granting of the letters, it was stated generally that the intestate " died possessed of

certain personal property in the state of New York," etc., and that the particular *situs* of the property in the county was not alleged; but, before the letters issued, further facts were alleged, by the affidavit of the petitioner, showing the existence of assets in that county. Thus the fact which existed to give jurisdiction to the surrogate to act, but which was not precisely stated in the petition of the administrator, was made to appear before the rendering of the decision upon the application. The statutory requirement of a jurisdictional fact was met by the production, by the applicant, of proof of its existence. The recital in the letters was *prima facie* evidence of its existence; and the record shows that the necessary facts were alleged, upon which the surrogate acted in granting them. His determination upon the proof cannot be disturbed by an attack upon its correctness, in a collateral proceeding. Surrogates' Courts, though established as courts of special and limited jurisdiction, have possessed the general and exclusive jurisdiction to order the administration upon the estates of deceased persons, and, where jurisdiction to act exists, their orders and decrees are made conclusive until they are revoked, or reversed on appeal. (2 R. S. 80 § 56.) That conclusiveness attaches in a case where a jurisdictional fact is in question, and it then appears that there was proof with respect to its existence, upon which the surrogate decided. His adjudication, in the exercise of his general and exclusive jurisdiction, where jurisdictional facts, necessary to the possession of that jurisdiction, appear to have been alleged, and when the necessary parties have been duly cited to appear before him, is not thereafter open to collateral attack. Power to affect the adjudication resides in the court which made it, and in the court to which it may be appealed; but otherwise it is not open to question. This principle, of course, in its application to other parties affected, implies the absence of fraud, or collusion. It is not material how the decision was reached; provided the facts, which confer power to act, were alleged. The surrogate was not confined to any form of procedure, or to any mode of proof, in acting upon an application for letters. The defect in the

allegations of the petition was supplied by allegations in a subsequent deposition, and we are bound to presume that, prior to issuing the letters, the surrogate deliberated and decided upon the right of the petitioner.

The plea, when urged collaterally, that the decision was erroneous, must always be unavailing. For its errors the remedy was by a direct proceeding for their correction, and subsequent proceedings, which rest upon the decree, will not be affected, however erroneous the adjudication may be urged to have been. (*Porter* v. *Purdy*, 29 N. Y. 106.)

The conclusiveness of letters of administration as to the authority of the surrogate has been the text of several decisions by this court. In *Roderigas* v. *East River Savings Institution* (63 N. Y. 460) it appeared that, at the time when certain letters of administration had issued, the alleged intestate was yet living, and the due statutory proofs of his death, upon which the surrogate acted, were shown not to have been founded in the fact. The defendant was sued for moneys, which it had paid over on the demand of the previous administrator, by the plaintiff, to whom letters were subsequently issued upon proofs of death. This court held that no recovery could be had against the defendant. In the opinion it was said: "Where general jurisdiction is given to a court over any subject, and that jurisdiction depends, in a particular case, upon facts which must be brought before the court for its determination upon evidence, and where it is required to act upon such evidence its decision upon the question of its jurisdiction is conclusive until reversed, revoked or vacated, so far as to protect its officers and all other innocent persons who act upon the faith of it." In *Kelly* v. *West* (80 N. Y. 139) the objection was raised that letters of administration were wholly void, because issued without any citation to the widow or renunciation by her. The objection was overruled, and it was said that "the surrogate had jurisdiction to grant the letters, and hence the statute makes them conclusive evidence of the authority of the persons to whom they were granted until revoked or set aside." In *Leonard* v. *Columbia Steam*

*Navigation Company* (84 N. Y. 48) it was said that "the letters of administration granted by the surrogate are conclusive as to his authority. * * * The letters on their face show that the intestate died leaving assets in the state and in the county of New York, and this gave the surrogate of the county of New York jurisdiction."

In the present case, all things concur to warrant the application of this rule of conclusiveness. There was the death of the party, while a non-resident of the state, and there was the allegation of assets in the county of Richmond, where the letters were issued. In order to the grant of letters, it was incumbent upon the surrogate to act judicially and to decide, whether it was a case in which he should order administration at all. The persons entitled as next of kin of the deceased were served with a citation to appear in the proceeding, and none appeared to oppose. More than thirty-six years elapsed between the granting of the letters and the sale to the defendant, and, during that time, no move appears to have been made, nor any step to have been taken by the parties, affected by the proceeding, which the records of the Surrogate's Court in Richmond county reveal.

The defect, asserted to exist in the proceedings instituted by the administrator for the sale of the decedent's real estate, is that the order to show cause why a sale should not be had was made returnable one day later than the time limited by statute. The theory of this ground of contention is, that, as the proceeding was purely statutory, jurisdiction depended upon strict compliance with the statutory requirement. The statute then in force, with respect to such sales, provided that the order should require all persons interested to appear, at a time and place specified, "not less than six weeks and not more than ten weeks from the time of making the order." The date of the order was November 18, 1850, and, the return day mentioned in the order was January 28, 1851. The number of days, by computation, was thus seventy-one; and, if we should estimate the weeks as commencing with the day when the order was granted, the return day was one day beyond the ten weeks.

We think it a sufficient answer to the defendant's objection that there was no substantial departure from the requirements of the statute, and that the lengthening of the time for appearance by a day could not prejudice the parties interested, and, therefore, the rule in *Stilwell* v. *Swarthout* (81 N. Y. 109) would not apply; in which case the error consisted in the order being made returnable four days less than the minimum time prescribed by statute. That was considered and said to be a substantial departure from the requirements of the statute, and one which went to the foundation of the proceeding. What the legislature had in view was the purpose to grant full opportunity to all persons in interest to be heard in the proceeding. It is obvious that the addition of a day to the statutory time cannot be deemed to be any impairment of that opportunity, or to work any possible prejudice to rights. If it was an irregularity at all, it was not one which abridged the rights of anyone, and, therefore, could not affect the foundation of the proceedings.

There appears to have been a mistake in the publication of the order to show cause in the Richmond county paper, by which the date of the return day was erroneously given as the ninth, instead of the twenty-eighth of January. The statute in force at the time provided that every order to show cause, made upon an application for authority to lease, mortgage or sell real estate, should be published. (2 R. S. 101.) Section 5 of the article required that " every such order to show cause shall be published for four weeks in a newspaper published in the county," and that a copy of the same should be served on the widow, heirs or devisees of the deceased. By the tenth section of the article, when the heirs or devisees did not reside in the state, the order was to be published once in each week, for six weeks successively, in the state paper. The petition of the administrator showed that the heirs of the deceased all resided out of the state, except a sister, who resided in the city and county of New York. The premises to be sold were situated in the city and county of New York. Publication was correctly made, as required by the statute, in the state

paper, and, also, in a paper published in the city and county of New York; and the publication in the paper in Richmond county was actually made for four weeks. It is not readily to be seen how, in the case of non-residence of the parties interested in opposing the application, and when the real estate to be sold was in New York county, that publication in Richmond county was important; or for what purpose it should be made there. The parties it was intended to reach, plainly, were the widow and heirs; because section 11 of the article mentions as the persons, whom the surrogate shall hear on the return day, "the executors, administrators and all persons interested in the estate who shall think proper to oppose the application." And the thirteenth section speaks of the competency of any heir or devisee, or any person claiming under them, to show cause in opposition. The proceeding being instituted in behalf of creditors of the estate, they could have no interest, nor reasonable desire, to oppose a proceeding, whereby the estate was to be realized upon for their payment. The parties interested in the estate, of whom the statute speaks, are to be taken to mean those having some actual interest in the real estate of the deceased. But it is thought that, inasmuch as the language of the statute in the ninth section referred to, provides that "every such order to show cause shall be published for four weeks in a newspaper published in the county," such a publication may be a jurisdictional prerequisite, and that an error in such a publication, such as that alleged here, affects the proceeding. Whatever the doubt which may be entertained on that point, we deem it unnecessary to pronounce upon it authoritatively; either as to the soundness of the point, or as to its materiality with respect to the proceeding in question. The record before us discloses the foundation for a good title by adverse possession; commencing under the administrator's deed and continuing, with acts of dominion over the property, during the grantee's lifetime, and, since his death, by the plaintiffs, in whom his will vested the legal title.

Among the facts found by the trial judge were these: That

the plaintiffs' testator had been in continual occupation and possession, under a claim of title founded upon deeds, from 1851; that the lands had been protected by a substantial enclosure, and that the plaintiffs and their testator had paid the taxes and assessments upon the same. The finding as to occupation was amply supported by evidence of a convincing character, and in which I fail to see any conflict as to the fact. Witnesses testified concerning the land, and its enclosure and uses, and some, to knowing plaintiffs' testator from 1851 down to the time of his death. He resided in an old mansion on the property; which consisted of a farm, or tract of land, in the city of New York, and the general boundaries of which were the Eleventh avenue and Broadway, on the east and west, respectively, and One Hundred and Sixteenth street and a lane running between One Hundred and Eleventh and One Hundred and Twelfth streets, on the north and south, respectively. It was testified that this tract was known as the Carrigan estate, or homestead. It was and has been inclosed by fences, or retaining walls, and was used, in part, for pasturing purposes and, in part, was cultivated. After their testator's death the plaintiffs rented the premises. There is no proof nor pretense of any other title to the property, lying either in grant or in claim. Nor does anything appear to disturb the conclusiveness of the presumption of a valid grant, which arises from an exclusive and uninterrupted possession of the property, under a claim of title founded on a conveyance, for a period extending far beyond the length of time mentioned in the statute of limitations. Such a presumption will always displace objections, based on flaws in the proceedings, in which the title has had its source, and protect the title from being injured, or affected by their disclosure.

We think there was no ground upon which the defendant's refusal to complete the purchase, upon this sale to him, could be justified, and that the title offered was a good and marketable one.

In view of the plaintiffs' consent to the extension of the time to January 17, 1887, for the completion of the contract of

purchase, interest on the purchase-money ought to be computed from that date only.

The judgment should, therefore, be modified in that respect, and, as so modified, it should be affirmed, with costs to the respondents.

All concur.

Judgment accordingly.