## In re DOUGLAS.

(Supreme Court, Appellate Division, First Department. April 4, 1901.)

1. EXECUTORS AND ADMINISTRATORS—INTERLOCUTORY ACCOUNTING—CONCLUSIVENESS.

    Where an executor files an account, and a decree is entered surcharging him with certain property, which decree is not appealed from, it is conclusive on the question of the executor's liability to such property, and cannot be impeached on final accounting.

2. SAME—LIABILITY FOR ASSETS LOST—ESTOPPEL OF BENEFICIARIES.

    Though an executor fails to dispose of certain bonds, which are of a character in which he is not authorized to invest the funds of the estate, or to retain as an investment for more than a year, yet he is not to be held personally liable for their subsequent loss; the beneficiaries under the will knowing that the bonds have not been disposed of, and making no objection to his continuing to hold them, at the time he was charged with their possession on an interlocutory accounting.

3. SAME—COMMISSIONS.

    Where an executor is discharged on his own motion before the final completion of the trust, he is not entitled to full commissions.

Appeal from surrogate's court, New York county.

In the matter of the judicial settlement of the accounts of Hugh J. Douglas, executor and trustee under the will of Mary E. Bird, deceased. From a decree of the surrogate court on final accounting, the executor appeals. Modified.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Otto T. Hess, for appellant.
A. H. Ammidown, for respondents.

McLAUGHLIN, J. On the 17th of July, 1889, Mary E. Bird died, leaving a last will and testament which was admitted to probate in August following; and letters testamentary thereon issued to the executor therein named, the appellant herein, who qualified and has since acted as such. On the 5th of April, 1891, the executor filed an account of his proceedings to that time, to which certain objections were made, and, among others, that the account should be surcharged with the value of two bonds of the Columbus, Hocking Valley & Toledo Railroad Company, including certain interest coupons. The issues raised by the objections were sent to a referee to take proof with respect to the same, and make a report thereon to the court. The referee thereafter reported as to the bonds that at the death of the testatrix a claim existed in her favor against one Henry C. Hepburn, which, after an action had been brought by the executor, was settled by him for five bonds of said railroad company; that only three of such bonds had at that time been delivered to the executor, but notwithstanding that fact he should be charged with the value of the other two, which was then fixed at $1,750; and that he should also be charged with certain interest coupons amounting to $150,—making in all $1,900. This report was subsequently confirmed by an order of the surrogate's court, and a decree entered to that effect, from which no appeal was taken, nor any attempt made to impeach its correctness, until April, 1898, when the executor filed another account, and, upon his own petition, asked to be finally discharged. In this last account the executor credited himself with $1,900, the value of the two bonds and the interest coupons with which he had been charged in the decree of 1892. He also credited himself with $3,000, the par value of three bonds of the Staten Island Gaslight Company, with which he had also been charged in the decree of 1892. These credits were made by him, to use his own language, for the following reason:

"All the above securities belonged to the estate when I qualified as executor. The Staten Island Gaslight Company became insolvent, has been reorganized, and these bonds are utterly worthless. The two bonds of the Columbus, Hocking Valley & Toledo Railroad Company and the coupons charged to me in the decree on the former accounting were the balance of a claim in favor of the decedent against Henry C. Hepburn. I have made every endeavor to collect these securities from Henry C. Hepburn, and have been unable to do so. I hold a certificate for 1,300 shares of the capital stock of the Tolima Mining Company, which belongs to the said Hepburn, and is to be delivered to him when he surrenders the Columbus & Hocking Valley bonds. This stock of the Tolima Mining Company is also worthless."

Objections, among others, were made to these credits, and the questions raised were sent to a referee, who thereafter reported that the executor's accounts should be surcharged with both of the items; that as to the two bonds of the Columbus, Hocking Valley & Toledo Railroad Company, and the coupons referred to, the same had never in fact been received by the executor, but that he had not used due diligence in the performance of his duties in endeavoring to collect them, and for that reason he was chargeable with their value as fixed and determined by the decree entered in 1892; and, as to the three bonds of the Staten Island Gaslight Company, the executor had no

authority to retain them for more than one year after the same came into his possession, and, having done so, he was chargeable with the value of such bonds as fixed and determined by the former decree, together with interest thereon at the rate of 4 per cent. from that date. An order was thereafter made confirming the report, and a decree entered settling and adjusting the accounts in substantially the manner recommended in the referee's report, from which the executor has appealed. He urges that the decree is erroneous in four respects: (1) In surcharging his account with the value of the two Columbus, Hocking Valley & Toledo Railroad Company bonds and the interest coupons; (2) in surcharging his account with the value of the three bonds of the Staten Island Gaslight Company, as fixed and determined by the decree of 1892, and interest thereon at the rate of 4 per cent. from that time; (3) that a clerical error has been made in the decree, by which he has been overcharged with the sum of $1,613.52; (4) that he should have been allowed full commissions on the moneys received and disbursed by him. These alleged errors will be considered in the order named:

1. As to the Columbus, Hocking Valley & Toledo Railroad bonds and coupons, the learned surrogate held that the decree of 1892 was conclusive upon this question, and that if it be true, as found by the referee, that the executor had never in fact received but three, instead of five, bonds, as there stated, the only way in which relief could be obtained by him was by amending the former decree; and in this conclusion we fully concur. That decree could not be attacked collaterally. Culross v. Gibbons, 130 N. Y. 447, 29 N. E. 839; O'Connor v. Huggins, 113 N. Y. 511, 21 N. E. 184; In re Hawley, 100 N. Y. 206, 3 N. E. 68; In re Tilden's Estate, 98 N. Y. 434; Jordan v. Van Epps, 85 N. Y. 427. So long as it remained in force it was conclusive upon all of the parties before the court at the time it was entered, as to all of the matters therein adjudicated. In re Tilden's Estate supra; In re Hood, 90 N. Y. 512. It is also to be noted that, after the surrogate had thus held, the executor moved to amend the decree of 1892, which motion was denied and an appeal taken to this court, where the order of the surrogate's court was affirmed (In re Douglas, 52 App. Div. 303, 65 N. Y. Supp. 103),—we holding that the surrogate had no power, under subdivision 6 of section 2481 of the Code of Civil Procedure, to vacate a decree settling an executor's account upon the ground that an adjudication contained therein was erroneous, where the questions to which the adjudication related were contested, and no appeal had been taken from the decree. Therefore the decree of 1892, so far as the same relates to the railroad bonds, is res adjudicata. Cluff v. Day, 141 N. Y. 580, 36 N. E. 182.

2. As to the three bonds of the Staten Island Gaslight Company, we are of the opinion that the account of the executor should not have been surcharged with this item. It is true, as a general proposition, they were not bonds or securities "of the nature or character" in which the executor was authorized to invest the funds of the estate, or to retain as an investment for more than one year after the same came into his possession; and the fact that he did not dispose of them within that time was, under the rule laid down in King v. Talbot, 40

N. Y. 76, and Mills v. Hoffman, 26 Hun, 594, and many other cases which might be cited to the same effect, a breach of trust, which made him liable for any loss by reason thereof. This is the general rule, unless the executor shows to the court the existence of special facts or circumstances which make a longer time reasonable. In re Weston's Estate, 91 N. Y. 502. But the beneficiaries under the will of the testatrix knew when the decree of 1892 was entered that these bonds had not then been disposed of. The account which the executor then filed, and which was the basis of that decree, showed that he had retained such bonds in his possession; and if they intended to hold him liable for any loss which had been sustained up to that time, or if they objected to his continuing to hold the same as securities for the estate, they were then called upon to object, and, failing to have done so, it must be held, under that decree, that they consented to his holding the bonds as an investment, and are now estopped from asserting to the contrary. In re Peck's Estate, 31 App. Div. 407, 52 N. Y. Supp. 1028. The decree, therefore, should be modified by striking out this item, together with the interest computed thereon.

3. As to the alleged clerical error, it was conceded upon the oral argument, and is also conceded in the brief used, that a clerical error was made in the computation of the executor's accounts, in and by which he was overcharged with $1,613.52. This amount should also be deducted.

4. As to commissions, we are of the opinion that the surrogate was right in holding that the executor was not entitled to full commissions. Upon his own motion he was discharged before the final completion of the trust created in the will. Under such circumstances he ought not to have full commissions; that is, commissions for receiving and disbursing the money which came into his hands. The surrogate allowed him one-half commissions, and this is all he was entitled to. In any view, the amount to be awarded—he having asked to be discharged before the final completion of the trust—was in the discretion of the surrogate. In re Allen, 96 N. Y. 327.

It follows, therefore, that the decree should be modified as indicated in this opinion, and as thus modified the same should be affirmed, without costs to either party on this appeal. All concur.