(Surrogate's Court, Rensselaer County. February, 1905.)

1. EXECUTORS AND ADMINISTRATORS—COMMISSIONS.

Under Code Civ. Proc. § 2730, providing for the apportionment of compensation where there shall be more than one executor or administrator, according to the services rendered, the number of executors or administrators to whom commissions can be allowed is measured by the number in office at the time of awarding such commissions, and not by the number who may have acted at some time, and for one reason or another have ceased to be executors or administrators at the time of the judicial settlement.

2. SAME—DECEASED COEXECUTOR—ALLOWANCE.

The executor of a deceased coexecutor, on the settlement of the accounts of a sole surviving executor, is not before the court in his official capacity; and any allowance to be made to him rests in the sound discretion of the surrogate, and is not measured by Code Civ. Proc. § 2730, relating to the compensation of executors.

3. SAME—SURVIVING EXECUTOR.

Where three executors were named in a will, and only two qualified, and one died after serving for nine months, and before the settlement of the surviving executor's accounts, and no accounting was made by the executor of the deceased executor, and the estate exceeded $100,000, personal property, over all debts, only one full commission can be allowed to the accounting executor for receiving the principal of the estate, and for turning it over to himself in the form of the investments in which he received it.

4. SAME—DECEASED EXECUTOR—ALLOWANCE.

Where one of two executors died nine months after appointment, in determining the compensation to be allowed him, whatever portion of the estate which came into his hands which would have been turned over to legatees, or on the final accounting of the surviving executor turned over in kind to the trustee authorized to receive it under the will, should be included, with the amount realized in cash up to the time of the death of the coexecutor, in computing commissions at one-half rate for receiving, where the terms of the will and consent of the parties render the conversion of the property into cash unnecessary, and commissions also on cash paid out during the life of the deceased coexecutor.

5. WILL—CONSTRUCTION—DIVISION OF RESIDUARY ESTATE.

Testator gave his residuary estate in trust to be divided into as many separate equal parts as the testator left surviving grandchildren, such

parts to be paid over to each grandchild as he became of age. *Held*
that, on judicial settlement of the accounts of the surviving executor, the
trustee and the residuary legatees are entitled to have the residuary es-
tate divided into as many parts as there are grandchildren, by the trustee
selected by the testator, and the executor will be directed to turn over
the whole of the estate for the purposes of the trust; the shares of the
adult grandchildren being payable after the division.

In the matter of the judicial settlement of the accounts of John J.
McCormick, surviving executor of William Kennedy. Decree ren-
dered.

Edward Murphy, 2d, for surviving executor, John J. McCormick.
H. D. Bailey, for executors of William Shaw, a deceased executor.
William J. Roche, special guardian.

HEATON, S. Judicial settlement of the accounts of John J. Mc-
Cormick as surviving executor of the will of William Kennedy, de-
ceased. Two questions arise: First, how much commission shall be
allowed McCormick, and what, if any, commission shall be allowed the
representatives of the deceased executor, Shaw? And second, to
whom shall the accounting executor pay two one-quarter parts of the
residuary estate—to himself as trustee, or to the beneficiaries of the
trusts who are now of legal age?

The value of the personal estate of decedent amounts to more than
$100,000 over all his debts, and the testator named three executors in
his will, two of whom qualified and entered upon the discharge of their
duties. Therefore section 2730 of the Code applies, wherein it directs
the surrogate in such a case to allow to each executor the full compen-
sation on principal and income allowed by such section to a sole ex-
ecutor, and to apportion the same among them according to the services
rendered by them respectively. One of the two executors who qual-
ified served nine months and died. His executors are parties to this
accounting, and claim that there should be allowed two full commis-
sions from this estate—one to the surviving executor, and another
for the benefit of the deceased executor's estate and the surviving
executor—and, to obviate the necessity for apportionment according
to the services rendered, Mr. McCormick and the executors of Wil-
liam Shaw have agreed that the amount of such second full commis-
sion shall be apportioned as follows: $3,035 to Mr. Shaw's estate,
and the balance to Mr. McCormick. The estate of Mr. Kennedy was
well invested, and during the nine months before the death of Mr.
Shaw only $14,205.62 cash had been realized from the assets, and but
$10,732.93 had been paid out. Mr. McCormick during the life of the
testator had been his clerk, bookkeeper, and confidential man. Mr.
Shaw had been testator's attorney. As executors, both men up to
the death of Mr. Shaw took active part in the management of the
estate in their respective capacities above referred to.

The precise question raised seems never to have been determined
by the Court of Appeals, and, it is claimed, has never been fully con-
sidered by the Appellate Division. In none of the cases does there
seem to be a full and satisfactory discussion of the subject.

In construing section 2730, the question arises whether the Legisla-
ture intended to compensate the faithful and active man with more

than his quota of commissions where his associate for any cause left upon him the greater part of the work, and the further question as to the effect of a resignation, removal, or death of a coexecutor upon the amount of commissions to be awarded and apportioned.

Before the act of 1849 the Revised Statutes gave the compensation to the executors in general terms, without providing for any apportionment among them upon equitable principles, and it was therefore held that each executor was entitled to an equal share of the commissions, no matter how much or how little of the work he had performed. White v. Bullock, 15 How. Prac. 102. By the act of 1849 (page 218, c. 160), in all cases where there was more than one executor the commission was apportioned among them according to the services rendered by them respectively. This act introduced the principle of apportionment, and the gross amount of commissions was to be divided among the executors according to their labor and deserts. But the increase of wealth and the great responsibility of administering large estates later brought a new element into the question of commissions. Persons of means and of experience in business affairs avoided and renounced the care of estates, and it was to meet this difficulty that the Legislature in 1863 (page 606, c. 362) determined to give full commissions to more than one executor who should undertake an estate amounting to $100,000 and upwards, and in that act this language was used:

"Each and every of such executors or administrators shall be entitled to and shall be allowed the full amount of compensation to which he would have been entitled if he had been sole executor or administrator; provided, however, that the whole amount of the compensation of such executors or administrators shall not exceed what would be paid to three executors or administrators."

Under this act it was held that there could be no apportionment where two executors qualified in an estate of over $100,000, but that each must be allowed a full commission, although the second executor did not qualify until near the close of the administration, and did nothing but sign three deeds of real estate. Matter of Van Nest, 1 Tuck. 130.

When chapter 18 of the Code of Civil Procedure was adopted, in 1880, the principle of equal division, and not apportionment, in estates of more than $100,000, was continued as found in section 2736. We had this condition, then, at that time: In estates of less than $100,000 personal, one commission was allowed, and the surrogate was directed to apportion it, where there was more than one executor or administrator, among them "according to the services rendered by them respectively"; but, in estates of more than $100,000 personal, each executor or administrator, not exceeding three, was allowed a full commission, and, if there were more than three, then the commissions to which three would be entitled must be divided among them equally. The result was that the active, working executor or administrator, who bore the burden and heat of the day, received his full commission, and no more, while the second and third executor or administrator received the same pay, although he quit at the end of the first hour, or began work at the eleventh hour. This principle was established at a very early day. St. Matthew, xx, 9.

Chapter 535, p. 718, of the Laws of 1881, amended section 2736 by extending the principle of apportionment, which theretofore had been applied only to estates of less than $100,000, so that where there were more than three executors or administrators the compensation to which three would be entitled should be apportioned among them according to the services rendered by them, respectively, instead of being divided among them equally. It also added this sentence, "A like apportionment shall be made in all cases where there shall be more than one executor or administrator," thus changing the rule in such a case from an equal division to an apportionment according to services rendered. The same provisions are now retained in section 2730 of the Code. It was well settled in this class of cases, prior to the extension of the apportionment rule in 1881, that one of two executors who did most of the work got no more than his one full commission, and that the second executor, who did little work, also got one full commission. When the Legislature contemplated a change in 1881, it could have made that change upon either of two theories: It might have been reasoned that in an estate of more than $100,000, where one executor was appointed and he accepted, he agreed to do the whole work for one full commission, and that the naming of two executors by the testator ought not to give either the right to more fees for doing part of the work than he would have had, as a sole executor, for doing it all. Therefore, if the surrogate should determine that the executors had not borne the burden equally, so that each was entitled to receive a full commission, he ought to be directed to allow the one who had done the greater portion of the work a full commission, but no more, and that as between the estate and the other executor the surrogate should determine what part of the second commission the other executor had earned, and direct payment accordingly. By this rule, if the estate had the benefit of full services from each of the executors, it would pay each full fees; but, if any executor failed to give the estate the benefit of his full share of service, the estate would pay him only for such service as he had rendered to it. Or the Legislature might have proceeded upon the second theory—that the law as it then stood, and as it had been settled, required the estate to pay as many full commissions as there were executors, not exceeding three, and required such commissions to be divided equally between or among such executors, without regard to the amount of services performed by them respectively; that the only injustice to be remedied was found in the requirement for an equal division of the gross amount of fees, without regard to the services rendered by each; that the testator was supposed to know the law, and that when he named two or three executors he apportioned a definite part of his estate, namely, the gross amount of two or three commissions, to pay for the necessary services of executors; and that the only change in the existing law which was needed was such a one as would adjust the equities between the executors themselves, so that the one who did the most work would receive the most of the gross fees to be devoted to paying for that work, and so that the one who did but little of it should not be

overpaid at the expense of his coexecutor, who had done more than his proportionate share.   Now which of these theories did the Legislature attempt to express when it made the amendment of 1881?

Before the amendment of 1881 the estate was taxed with two or three full commissions payable to the two or three executors without regard to the quantity of their services, and there is no indication that the amendment was intended to relieve the estate from paying the two or three full commissions, but rather that the Legislature sought to make a more equitable rule as between the executors themselves, so that, instead of an equal division of the two or three full commissions, there might be allowed to the executor who did the most work the greater part of the fees allowed for doing that work, and so that the man who did not do his proportionate part of the work could not demand an equal division of the fees. The cases where this section of the Code has been construed show that it has been uniformly held that the active executor was entitled to a portion of the unearned fees of his coexecutors in addition to his full commissions, and that the two or three commissions are considered and treated as a gross sum applicable to the payment of all executorial service.   Such cases are as follows:

In Matter of Buchanan, 5 N. Y. St. Rep. 351, there were three executors, who performed unequal services, and three full commissions were divided in the proportion of three-twelfths, four-twelfths and five-twelfths; thus giving the most active executor more than the amount of one commission.

"The three representatives are entitled to compensation equal to three times the amount of full commission to one executor, to be· apportioned in proportion to services rendered and responsibility borne."   Matter of Franklin, 26 Misc. Rep. 107, 56 N. Y. Supp. 858.

In Matter of Delaplaine, 45 Hun, 225, it was said, "By section 2736 of the Code of Civil Procedure, the executorial service that may be rendered in the administration of this estate * * * will be compensated by two full commissions;" and the court held that one executor would not be allowed to exclude his coexecutor from performing his part of the services, since by so doing he would practically secure to himself, besides the compensation that he would have been entitled to claim if the testator had named him as sole executor, a like compensation for excluding his coexecutor from sharing in the administration.

In Matter of Kenworthy, 63 Hun, 165, 17 N. Y. Supp. 655, there were three executors, and only two commissions were allowed by the surrogate.   The executrix, having received and disbursed only a small amount of money, was held not to be entitled to any commissions.   The General Term said:

"Section 2736 of the Code provides that * * * each executor, not exceeding three, is entitled to full compensation, unless the court shall apportion the aggregate according to the services rendered.   I do not understand that the power to apportion includes the power totally to abate any executor's compensation.   * * *   There seems to have been no occasion to apportion the aggregate in this case; at least, no such thing was done, and nobody complained on that account.   * * *   The statute, as applied to this case, says that she was entitled to full compensation, because there was nothing taken

from her compensation, or any apportionment. Here, as already observed, the statute is peremptory, and gave the executrix full commissions, because nothing was taken from her commissions by apportionment."

In Matter of Meyer, 95 App. Div. 443–453, 88 N. Y. Supp. 798, the fourth executor did little work, went to Europe, and was there at the time of the final judicial settlement. Two full commissions were allowed the two active executors, one-half of the third commissions was allowed the third executor, and the remaining one-half was allowed the absent executor.

It will be observed that up to this point this section has been considered only with reference to its application in the case of a completed judicial settlement where the executorial services had been fully performed, all of the executors having survived the settlement; and the conclusion must be reached that in such a case as many full commissions must be allowed and apportioned as there are executors or administrators, not exceeding three. From these cases, therefore, there seems to be no doubt about the proposition that if Mr. Shaw had gone to Europe after serving nine months, and had taken no part in the management of the estate from that time, but had survived this accounting, it would now be the duty of the surrogate to allow from the estate two full commissions, and to apportion one of them between Mr. Shaw and Mr. McCormick according to the services rendered by them, respectively. Does the fact that Mr. Shaw, instead of going to Europe, died nine months after entering upon the performance of his duties, require the application of a different rule? In either case the duty would devolve upon McCormick of completing the settlement of the estate as sole acting executor. With Mr. Shaw alive and refusing to act after serving nine months, McCormick would get additional compensation. With Mr. Shaw dead at the end of nine months, if the same rule was not applied, McCormick would get no additional compensation. But suppose Mr. Shaw had resigned or been removed at the end of nine months' service? Let us consider the cases dealing with those conditions:

In Matter of Hayden, 54 Hun, 197, 7 N. Y. Supp. 313, affirmed without opinion 125 N. Y. 776, 27 N. E. 409, the executors were accounting on their application for leave to resign. The estate was over $100,000, and there were three executors, and one had done all the work. He asked for three full commissions on the uninventoried value of the body of the estate not expended, and upon that portion received and paid out. The court held that the executors, having resigned before completing their duties, were not entitled to commissions on the body of the estate. As to three full commissions on the amount received and paid out, the court said:

"Section 2736 of the Code of Civil Procedure provides for commissions where the trusts have been fully administered. It evidently has no application to a case where the trust is not executed, and the executors resign before their duties are finished. In such a case we think no executor has the right to claim, either for himself or for his associate executor, the three commissions allowed by the section."

One full commission was allowed on the amount received and paid out.

In Matter of Allen, 96 N. Y. 327, one trustee was seeking to resign, and complained that the allowance of commissions was too small, while other parties claimed that none should have been allowed. The court said:

"The principal care may have devolved upon the other trustees, but this is not material. The testator thought proper not only to create the trust, but to require for its execution three trustees, and the law now permits compensation to persons placed in that situation, and who serve to the end of the trust, without regard to the actual trouble or labor to which they have been put. It is true, the petitioner cannot claim on that ground. He does not intend to continue. * * * Compensation, therefore, cannot be claimed as of course, and, if allowed, must be measured by a different rule from that which the law applies when the trust * * * have been fully executed."

In Matter of Douglas, 60 App. Div. 64, 69 N. Y. Supp. 687, was another case of resignation, and the court held that full commissions should not be allowed.

In Matter of Baker, 35 Hun, 272, the administrator with the will annexed was removed for failure to file a bond about 18 months after his appointment, and it was held that, as he had not completed his trust, he was in the same condition as one asking to resign, and ought not to be allowed commissions on unconverted real estate.

In Matter of Allen, 29 Hun, 9, the right of one of three executors and trustees to commissions on a $100,000 estate was being discussed, and the court adopted from the Special Term opinion this expression, "If for any reason the trustee does not perform the duty, his right to the commissions is not complete."

In the Matter of Worthington (Sup.) 22 N. Y. Supp. 19, the estate was more than $100,000, and there were four executors, one of whom; after serving about eight years, was declared a lunatic, removed from office, and afterwards died. He had assigned his right to commissions to his attorney, who sought to be made a party to the accounting proceedings. The surrogate said, "But it appears that H. was entitled to no commissions on the corpus of the estate, * * * because of his removal before the completion of his duties;" and the surrogate quotes with approval the language of the Baker Case, that "if, for any reason, the trustee does not perform the duty, his right to commissions is not complete," and added: "It can therefore make no difference whether he resigns, die, or be removed for cause. In either case no commissions can be allowed." The General Term said:

"The mode of ascertaining and fixing commissions of executors are statutory, and, until they are so ascertained and fixed, none are due; and in this case, by reason of the lunacy and death of H. none ever became due and payable."

The Court of Appeals, in affirming the General Term (141 N. Y. 9, 35 N. E. 929, 23 L. R. A. 97), only discussed the nonassignability of commissions, but said:

"It may be conceded that * * * the removed executor had actively participated for many years in the management and administration of the estate, and that his representatives were therefore entitled to some consideration upon the final allowance of commissions by the surrogate. The difficulty in the way of the appellant is of another kind."

We can then go one step further, and from the foregoing cases draw the conclusion that, when an executor or administrator resigns or is removed before the completion of his duties, he is not entitled, under section 2730, to draw a full commission, either for his own benefit or that of his associates. In such cases the amount of compensation to be allowed for his services is not measured by section 2730, but is in the discretion of the surrogate. And now we come to the precise question in this case: What is the effect of the death of one of the executors after he has qualified, and before the final settlement, as regards the allowance of commissions under section 2730 for the benefit of his associates and his own estate? There seem to be a few cases which hold with the claimants in this case, namely, that two full commissions must be allowed and apportioned between McCormick and Shaw's executors. In the cases seeming to hold to the contrary, unfortunately, these cases have not been discussed, which is one reason why the rule to be applied seems to be so unsettled.

In Betts v. Betts, 4 Abb. N. C. 317–437, the testator died in 1851, had an estate of over $100,000 and several executors, one of whom was the widow, Mrs. Holbrook, who lived until 1874. The case came before the court in 1878, and, on a claim made by her executors for commissions on her behalf, the court said:

"She gave no special personal attention to the management of the estate, and, if her right to commissions rested alone upon actual services rendered, the allowance to her would properly be measured upon a small standard; but in estates exceeding $100,000 the statute peremptorily fixes an allowance for each of the executors, not exceeding three. This case comes within the statute, and commissions should be allowed her on sums received and paid out on what is called the general account."

There seems to have been no apportionment of any part of her commissions, since this was before the law provided for apportionment in such cases.

In Matter of Newland, 7 Misc. Rep. 728, 28 N. Y. Supp. 496, there was an estate of over $100,000 personal, with two executors. One, after serving 16 months, died. The other completed the trust duties. Held, that two full commissions should be allowed—one to the surviving executor, and, in addition, one-half of the commission allowed by law upon all property on hand and undisturbed at the death of the coexecutor, and to the executor of the deceased executor commissions on all property actually received, paid out, and distributed to legatees and others by both up to the death of one, and, in addition, one-half the commissions on all property held by both executors and remaining on hand at the date of death of said coexecutor; thus allowing two full commissions.

In Welling v. Welling, 3 Dem. Sur. 511, there was an estate of over $100,000, with three executors. One died six months after appointment. Held, that three full commissions should be apportioned among the two survivors and the executors of the deceased executor.

In Matter of Roosevelt, 5 Redf. Sur. 601, J. and T. were executors and trustees of an estate of over $100,000. In 1876 they ac-

counted as executors, and received the corpus of the estate as trustees upon three trusts, each being over $100,000. T. died in 1878, and J. continued to act as sole trustee, and made and settled his annual account in 1882, and at that time application was made to the surrogate for the allowance of commissions to J. and the representatives of T. upon the capital of the trusts for receiving the same. Allowed. Apparently nothing was apportioned or allowed for any service rendered after the death of the trustee, T.

Matter of Whipple, 81 App. Div. 589, 81 N. Y. Supp. 393, is a recent case, and is entirely at variance with the cases just referred to, which cases are not mentioned or discussed in the opinion. An examination of the appeal book and briefs shows that no claim was urged before the court that three full commissions should be allowed and apportioned, the claimant asking only that the total amount upon which commissions were allowed her as the executrix of the deceased executor be increased. However, in the briefs the attention of the court was called to these cases, which were claimed to be authority for a much larger allowance of commissions. The Appellate Division sustained the surrogate in allowing two full commissions to the two surviving executors, and commissions to the estate of the deceased executor, computed upon the amount received and paid out during his lifetime.

From these divergent opinions no conclusion can be drawn, based upon unquestioned authority, but from them all he may get sufficient instruction to enable us to correctly interpret section 2730. That section opens with the statement that "on the settlement of the account of an executor or administrator, the surrogate must allow," etc. It does not in terms apply to the allowance of compensation to a resigning executor, or to a removed executor, or to the representative of a deceased executor, but to an executor or administrator who is before the court, having completed his duties, and the time having arrived for the fixing and allowing of commissions. The executors or administrators to whom commissions are to be awarded under that section are those who are such at the time of the judicial settlement, and not those who may have been such at some prior time, and who for any cause are no longer before the surrogate as such officers. Matter of Allen, 96 N. Y. 327; Matter of Hayden, 54 Hun, 197, 7 N. Y. Supp. 313.

It is well settled that executors and administrators have no absolute right to commissions until they are determined upon and awarded by the surrogate on a judicial settlement of their accounts. That they are unassignable, and may be lost by misconduct or resignation or death. Matter of Worthington, 141 N. Y. 9, 35 N. E. 929, 23 L. R. A. 97; Matter of Furniss, 86 App. Div. 96, 83 N. Y. Supp. 530; Matter of Dunkel, 5 Dem. Sur. 188; Naylor v. Gale, 73 Hun, 53, 25 N. Y. Supp. 934.

The number of executors or administrators to whom commissions can be allowed under section 2730 is measured by the number in office at the time for awarding such commissions, if three or more, then three commissions, if two, two commissions, if one, one commission, and not by the number who from first to last may have

qualified and acted, and for one reason or another have ceased to be executors or administrators at the time of the accounting. Whether they have resigned, have been removed for cause, or have died, neither they nor their representatives are before the surrogate in their official capacity on an accounting by the survivor or survivors; and whatever allowance of compensation has been theretofore made to them or which should be made to them upon such judicial settlement is not measured by section 2730, but by the good judgment and sound discretion of the surrogate.

This reasoning and construction given to section 2730 require us to hold in this case that, since Mr. McCormick is now accounting as sole executor, but one full commission can be allowed, and that is awarded to him. No separate accounting has been had by the executors of Mr. Shaw for his acts and doings as coexecutor, but the amount of the estate received in money during his life, not including cash on hand, was $14,205.62, and the amount disbursed during that period was $10,-732.93. It is the claim of the special guardian that the allowance of compensation for Mr. Shaw's services should be based upon those amounts, and that no compensation should be computed on the value of the personal estate received by him. This is now a final accounting, and the value of the estate to be turned over to the surviving executor as trustee is known, not estimated from the inventory, and will be received by the trustee as cash by his consent, and in accordance with the terms of the will of the deceased, who in and by such will authorized the trustees to receive such investments in kind as cash. That portion of the will reads as follows:

"I authorize my executors to retain, and the trustees of the trust estate created in this my will to receive from my executors and hold, such of the investments, securities and real property owned by me at my decease, as my executors or trustees may deem safe and desirable."

It is the obvious intent of the law to make the sums called "commissions" compensation, not alone for the service of receiving and paying out, but compensation for the whole services, measured by a fixed standard, based upon receipts and disbursements. Collier v. Munn, 41 N. Y. 143; Wagstaff v. Lowerre, 3 Abb. Prac. 411; Hill v. Nelson, 1 Dem. Sur. 357; Matter of Harris, 4 Dem. Sur. 463. Our statute provides compensation for executors and administrators based upon sums of money received and paid out. There is no mode of computing commissions other than is furnished by the statute. Hall v. Tryon, 1 Dem. Sur. 296. The discretion to be exercised by the surrogate in fixing the compensation, when any at all is allowed, of executors or administrators upon their resignation, removal, or death, has uniformly followed the standard of the percentage upon receipts and disbursements fixed by section 2730. The surviving executor is allowed commissions upon this accounting for receiving the principal of the estate, and for turning it over to himself largely in the form of the investments in which he received it. In allowing compensation for Mr. Shaw's services, whatever portion of the estate received by him which has been turned over to the legatees, or is now being turned over in kind to the trustee, ought to be included with the amount actually realized in cash up to the time of his death, as a basis for computing

commissions at one-half rate for receiving, since by the terms of the will and the consent of the parties on this accounting it has never become necessary to convert such property into cash, but the same is now treated as so much cash received and held at the time of Mr. Shaw's death.   This course would be justified by the principles laid down in Matter of Curtiss, 15 Misc. Rep. 545, 37 N. Y. Supp. 586; Matter of Willets, 112 N. Y. 289, 19 N. E. 690; McAlpine v. Potter, 126 N. Y. 285, 27 N. E. 475; Matter of Johnson, 170 N. Y. 139, 63 N. E. 63.

In addition, commissions should be computed on the cash amounts paid out during Mr. Shaw's life, but not upon any money or property thereafter paid out, or now turned over under this accounting.

The second question raised on this judicial settlement is as to the disposition to be made of the residuary estate by the executor.   The will of deceased was made May 1, 1902.   Francis H. Kennedy was then over 22 years of age.   The grandchildren referred to in the twenty-second paragraph of the will are Francis H. Kennedy, now over 26 years old, Edward M. Kennedy, now over 22 years old, and John P. Kennedy and William K. Hutton, both under 21.   The ascertained residuary estate is personal property, over $100,000, consisting principally of stocks, bonds, and mortgages of various amounts.   The provisions of the will applicable to the questions involved are twenty-second paragraph:

"All the rest, residue and remainder of my estate, * * * I give, devise and bequeath to my executors * * * and to the survivors and survivor of them, or to those of them who shall qualify and act as such executors, in trust nevertheless, for the following uses and purposes, that is to say: 1st. To divide the principal of the trust estate hereby created into as many separate equal parts as I shall leave grandchildren me surviving. * * * To invest, collect income," etc.   "2nd. To pay over income," etc.   "3rd. To pay over to each of the named grandchildren, one of said parts as they respectively become of age."

Twenty-third paragraph of will authorizes trustee to receive investments as testator left them.   All the investments comprising this residue are of that character.

It is claimed on behalf of the two residuary legatees, who are of legal age, that as to them there is no trust created; that they have survived the testator, and are of legal age, and therefore are entitled to receive each one-fourth of the estate direct from the executor, and not through the medium of the trustee.   This might be clearly so if the legacy was of a specified amount of money or of specific securities.   But here is a large estate, made up of all sorts of securities and evidences of debt, which by the terms of the will the trustee is authorized to receive, and he is first required by the express provisions of the trust "to divide the principal of the trust estate hereby created into as many separate equal parts as I shall leave grandchildren me surviving."   This power of equitable division is reposed in the sound discretion of the trustee, and not in the executor.   The estate is to be turned over in bulk by the executor, and to be divided by the trustee into four equal parts.   When such division is made, two of such parts will be immediately payable to two of the grandchildren, one of whom was of age when the will was made,

and the other of whom has arrived at age since that time. If the trust has executed itself, and there is no trust duty to be performed by the trustee, then it may be proper to direct the payment by the executor direct to the adult legatees. In Yates v. Thomas, 35 Misc. Rep. 552, 71 N. Y. Supp. 1113, the question involved was under discussion. It was claimed that on the death of an annuitant the trust then and there ceased and terminated, and that, as the remaindermen were then entitled to an immediate delivery of the corpus, there was no unexecuted trust over which the surrogate had jurisdiction to appoint a trustee. But in that case the will provided that upon the death of the annuitant the trustee was to pay and divide the trust estate among certain persons in certain proportions, and the court held that, as the provisions for division and paying over had not been complied with, the trust was still unexecuted, and the surrogate had power to appoint a substituted trustee. Here we have two adults and two infants interested in the equitable division of these securities, and, while the adults might consent to receive a definite part of such securities as their share, no such consent can be made by the infants interested. A trustee has been named, with power to act for all, and without such action by him the trust would not be executed. In Matter of Fisher, 93 App. Div. 186, 87 N. Y. Supp. 567, the question of commissions arose regarding some stocks and bonds described as the contents of a safe deposit box, and given to several persons. It was held that these securities must pass through the hands of the executor and be converted into money, if necessary for the purpose of equitable division, and were not to be delivered to the legatees as a specific legacy. In this case it must be held that the infant legatees and the trustee are entitled to have the terms of the trust carried out by a division of the residuary estate into four parts by the trustee selected by the testator to do that, among other things, and the executor will therefore be directed to turn over the whole of their residuary estate for the purpose of the trust. Let findings and decree be prepared accordingly.

Decreed accordingly.